## THE FIRST NATIONAL BANK OF HORNELLSVILLE, N. Y., RESPONDENT, v. JOHN HYLAND, APPELLANT.

*Presumption, from the failure of a party to produce a witness, that his testimony would not be favorable to him — when rebutted — test of an expert as to signatures.*

In an action upon a promissory note, in which the defendant denied the indorsement thereof by him charged in the complaint, the plaintiff's counsel was permitted on the trial to make a statement, which was not objected to or questioned, that as attorneys for the plaintiff they had procured a writ of *habeas corpus* to bring the prisoner before the court to testify in this case, but that, on the day before the cause was reached for trial, they had received telegraphic information from their correspondents in Rochester to the effect that the defendant had been that morning taken from the custody of the sheriff by the United States marshal, and that they could not tell to what place nor for what time.

The court charged the jury that, under the circumstances of the case, no legal presumption arose by reason of the failure of the plaintiff to produce the defendant as a witness, to which instruction the defendant's counsel excepted and requested the court to charge that the presumption did arise that the evidence of the defendant would not be beneficial to the plaintiff, which the court declined to do.

*Held*, no error.

*Mills* v. *Twist* (8 Johns., 121) and *Jackson* v. *Waldron* (13 Wend., 199) distinguished.

The judgment of an expert as to handwriting may be properly tested by inquiries as to his opinion in regard to the genuineness of defendant's signatures to other notes or indorsements which are in evidence.

*Hilsley* v. *Palmer* (32 Hun, 472) not followed.

APPEAL by the defendant from a judgment in favor of the plaintiff, entered upon the verdict of a jury after a trial at the Steuben Circuit, before the court and a jury, which judgment was entered in the clerk's office of the county of Steuben on the 24th day of November, 1888.

*William A. Sutherland*, for the appellant.

*DeM. Page*, for the respondent.

DWIGHT, J.:

The action was against the defendant as indorser of a promissory note, which purported to be made by Lester B. Faulkner, and to be indorsed by James Faulkner and the defendant. The defendant denied the indorsement attributed to him. The evidence was conflicting, but amply sustained the allegation of the plaintiff. The

defendant's appeal is based upon exceptions taken on the trial. The first of these points to alleged error in the charge of the court in respect to the failure of the plaintiff to produce James Faulkner as a witness. The body of the note was in the handwriting of James Faulkner, as was also the indorsement of his name. The note was delivered to the plaintiff by James Faulkner, in renewal of a former note, bearing the same names. The delivery was by mail, under cover of a letter of Faulkner, in which he wrote : " I herewith inclose new note, with same indorsers and check to pay interest. I would have sent it before, but Mr. Hyland has been absent and returned last evening." The evidence contains no history of the note for which this renewal was given, nor of the note in suit, beyond what is stated above. James Faulkner was not called as a witness. He had been for some months in the custody of the sheriff of Monroe county, under process of the United States courts. At the close of the evidence the plaintiff's counsel was permitted to make the statement, which was not objected to or questioned, that, as attorneys for the plaintiff, they had procured a writ of *habeas corpus* to bring the prisoner before the court to testify in this case, but that on the day before the cause was reached for trial they had received telegraphic information from their correspondents in Rochester to the effect that Faulkner had been that morning taken from the custody of the sheriff by the United States marshal, and that they could not tell to what place nor for what time. The court charged the jury that, under the circumstances of the case, no legal presumption arose by reason of the failure of the plaintiff to produce James Faulkner as a witness. To this instruction the defendant's counsel excepted, and requested the court to charge that the presumption did arise that the evidence of James Faulkner would not be beneficial to the plaintiff. The court declined to vary its charge in that respect, and to that ruling the defendant's counsel excepted.

We do not think these exceptions indicate error in the disposition of the question presented. Conceding that the evidence in the case showed that James Faulkner must have personal knowledge of the genuineness or falsity of the indorsement in question, and that the plaintiff was bound to use reasonable diligence to procure his testimony for the trial of the case, it might have been a question for the

jury whether such reasonable diligence had been employed; but there was no request to submit that question to the jury. The case, in that respect, was allowed to stand upon the unquestioned statement of counsel that a writ of *habeas corpus ad testificandum* had been procured in due time; and upon evidence which tended to show that the execution of the writ had been prevented by the removal of the prisoner from the custody of the officer to whom it was directed. If such was the case, the plaintiff was not required to lose the trial of the cause at the circuit for which it was prepared, and no presumption of law did arise to the prejudice of the plaintiff's case. The question here was not, as in the cases in *Mills* v. *Twist* (8 Johns., 121), and *Jackson* v. *Waldron* (13 Wend., 199), a question of the admission, under objection, of secondary evidence. In those cases it was a question for the court whether sufficient excuse had been made for the non-production of primary evidence. Here there was no question between primary and secondary evidence, because all the evidence given on the part of the plaintiff was primary in its character. There was only, at the most, a question for the jury, whether the plaintiff had wrongfully withheld or negligently omitted to produce other, and possibly more convincing, evidence of the same general character; and, as we have seen, there was no request to submit that question to the jury more fully than already had been done.

The second class of exceptions argued are those which relate to the admission of evidence of security taken by the defendant for his indorsements for James Faulkner. Four conveyances — three mortgages and a deed — were received in evidence, all given by Faulkner to Hyland within ten days before the closing of the bank. The deed expressed a consideration of $5,000, and purported to be given in payment of money advanced to the party of the first part by the party of the second part. One of the mortgages, for $20,000, purported to be given as security for the payment of that sum " to cover certain promissory notes made and indorsed by said John Hyland for the benefit of James Faulkner." The other two mortgages were each intended as security for the payment of fifteen thousand dollars ($15,000), " according to the condition of a bond," etc., but no such bond was, in either case, produced by the defendant and, so far as appears, none was delivered to him. Here was, apparently,

payment, or security for the payment, of a total sum of $55,000, apparently either due to the defendant from Faulkner, or for which the former was liable by indorsement or otherwise for the latter. The nominal amount of the securities thus proved corresponded very nearly with that which witnesses for the plaintiff testified the defendant stated he held as security for his indorsements, at the time when, as they testify, he admitted that the note in suit was a genuine evidence of such liability on his part. The evidence in the case gave room for the contention on the part of the plaintiff that the amount of the note in suit was necessary to make up the amount for which there was an attempt to give security; and, so far as that contention was supported, the evidence in question had some relevancy to the question of the genuineness of the defendant's indorsement of the note. It also tended to illustrate the relations and mode of dealing between the parties, and, possibly, had some bearing upon the probability or otherwise of Faulkner's making an unauthorized use of the defendant's name. Though not very direct or important evidence, we are not prepared to say that it was incompetent evidence, nor likely to have been to the prejudice of the defendant.

The cross-examination allowed of the witness O'Meara was not improper. He had testified, in behalf of the defendant, to his opinion of the genuineness of the indorsement of the defendant's name on the note in suit. The questions put to him as to his opinion of the genuineness of defendant's signatures to other notes or indorsements which were in evidence was calculated to test the correctness of his judgment. So far as the opinion of the court in *Hilsley* v. *Palmer* (32 Hun, 472) can be construed to hold that such a test of the judgment of an expert may not properly be applied, we are not inclined to follow it as authority.

We find no error in the rulings of the court in this case which vitiate the judgment, and conclude that the judgment should be affirmed.

All concurred.

Judgment affirmed.