# Court of Appeals.

October 11, 1892.

## PEOPLE v. MICHAEL MURPHY.

(48 St. Rep. 426; 135 N. Y. 450.)

**1. Witness—Impeachment—Contradiction.**

Collateral matter, though it may properly be used for purposes of cross-examination, cannot be contradicted in order to impeach the witness.

**2. Same.**

In such case, the party is bound by the replies of the witness to the questions put and cannot go further and litigate the immaterial issue.

**3. Trial—Objections—Waiver.**

Where evidence objected to is not in its essential nature incompetent, all grounds of objection, which might have been obviated, if they had been specifically stated, must be deemed to have been waived.

**4. Evidence—Other crimes.**

Where, upon the trial of a person charged with arson, evidence which very clearly tends to prove that the fire was not accidental, that its origin was instigated by malice and not from the desire of gain, that it was kindled by some person having an intimate knowledge in regard to the situation of the property, is properly received, even though it may tend to establish the defendant guilty of another crime than the one set forth in the indictment on trial.

Appeal from judgment of the supreme court, general term, fifth department, affirming judgment of Niagara county sessions, convicting defendant of the crime of arson in the third degree.

Richard Crowley, for appellant.

P. F. King, dist. att'y, for respondents.

MAYNARD, J.—The defendant was convicted of the crime of arson in the third degree. The evidence was purely circum-

stantial, as it ordinarily is in the proof of this class of crimes. It is unnecessary to review it in detail, but it was sufficient, we think, if believed by the jury, to connect the defendant with the commission of the offense charged and to support their conclusion that he was the perpetrator of it.

On the trial two anonymous letters were introduced in evidence and, undoubtedly, had an important bearing in securing defendant's conviction. One was written to a woman in the employ of the owner of the burned building, threatening to burn her house in case she continued in his employment, and requesting her to tell the owner that he would burn his property, too, if he did not discharge a servant girl with whom the defendant had a standing quarrel. The other letter was written four days after the fire, and was addressed to the owner of the building, and contained an implied threat of further harm unless he did as the writer requested, which, it was argued, had reference to the request in the former letter for the discharge of the servant girl. The prosecution resorted to the method authorized by chapter 36 of the Laws of 1880, in order to prove that these letters were writen by the defendant. A number of specimens of his genuine handwriting were put in evidence and six expert witnesses were called, all of whom, after a comparison of the letters with the specimens shown to have been genuine, testified, with different degrees of positiveness, that the letters and the specimens were all written by the same hand.

It is now objected that this mode of proof of defendant's handwriting was unauthorized; that it was not a case of a disputed writing within the provisions of the act of 1880; that the statute was only intended to change the rules of evidence formerly in force, where the authenticity of the paper is directly the subject matter of the issue to be tried, as in the case of the denial of the execution of a note, or a deed, or a will, or any other instrument relied upon as the foundation of an action or defense. It is insisted that all of the reported cases are of this character, and the language of Chief Judge Ruger, in Peck v. Callighan, 95 N. Y. 75, is quoted, where it is said: "The disputed writing referred to in the statute relates only to the instrument which is the subject of controversy in the action, and the specimens of handwriting admissible thereunder are those

of the person purporting to have executed the instrument in controversy."

What extrinsic merit there may be in this contention, we do not think is available to the defendant upon this appeal. No such objection appears in the record. The genuine specimens were received in evidence, and the expert witnesses called and permitted to make the comparison and give their opinion upon the subject, without any intimation from the defendant that such proof was inadmissible. The defendant himself even called two expert witnesses, and had the benefit of an opinion from them, after a comparison of the letters with the genuine specimens, to the effect that at least one of the letters was not written by the same person as the concededly genuine exhibits. When the letters were offered in evidence there was no objection to their reception on the ground that the proof of their genuineness was insufficient; but they were objected to solely upon the ground that the letters themselves were incompetent and improper as evidence, an objection which pertains to the subject matter of the proof offered, and not to the method of its presentation, or to any of the preliminary steps to be observed in its introduction. If the defendant had seasonably objected to the evidence of comparison of handwriting, and the objection had been sustained, the prosecution might have been able to have furnished sufficient common law proof of the genuineness of the letters to have authorized their admission as evidence, for one of the expert witnesses was a bank officer who had seen the defendant write, and who might have testified from his personal knowledge of the defendant's handwriting that, in his opinion, he wrote the letters in question; and other like testimony might have been produced.

The evidence objected to was not in its essential nature incompetent and, therefore, all grounds of objection which might have been obviated, if they had been specifically stated, must be deemed to have been waived. Turner v. City of Newburgh, 109 N. Y. 301; 15 St. Rep. 93; Bergmann v. Jones, 94 N. Y. 51.

Upon the cross-examination of the expert witnesses for the prosecution, the defendant, for the purpose of testing the accuracy of their judgment, submitted to them nine different specimens of handwriting, and each was asked to compare them with

the letters and specimens put in evidence by the People, and to say whether, in his opinion, they were in the same handwriting. Each gave a different answer, and, with two exceptions, each testified that some of the specimens were written by the same person who wrote the letters and the other specimens; but no two witnesses agreed as to the particular specimens which were so written. The defendant then offered to prove that these nine specimens were not in the handwriting of the defendant, but were written by his brother; and the evidence was excluded. We can discover no error in this ruling. It was a collateral matter, properly used for the purposes of a cross-examination, and the defendant was bound by the replies of the witness to the questions put. It served as an impressive warning to the jury to closely scrutinize the expert evidence, because of the want of concurrence of judgment on the part of the witnesses when they were required to compare the letters with specimens of whose authorship they were ignorant; and, to that extent, the cross-examination was valuable and proper, although it must rest somewhat in the sound discretion of the trial court to determine how far it shall be carried. But the defendant could not be permitted to go further and to litigate the material issue of the authenticity of the additional specimens submitted by him for such a purpose. Hilsley v. Palmer, 32 Hun, 472. It would give rise to a multiplicity of collateral issues which might render the litigation interminable; for the People would have the right to disprove, if they could, the testimony offered and by a comparison of handwriting show that these specimens were not written by the defendant's brother.

The case of the First National Bank of Hornellsville v. Hyland, 53 Hun, 108; 25 St. Rep, 446, affirmed by this court, 125 N. Y. 711; 35 St. Rep. 993, is not applicable here. The inquiry upon cross-examination was there limited to the genuineness of other signatures which were already in evidence.

Nor does the case of the Mutual Life Ins. Co. v. Suiter, 131 N. Y. 557; 42 St. Rep. 394, aid the defendant. It was there held that a party was not necessarily limited to the genuine signatures introduced by his adversary for the purpose of comparison, but should be permitted to put in evidence other genuine signa-

tures in order to afford as wide a range for comparison as might be practicable.

But the handwriting offered here was not that of the defendant, but of a stranger to the controversy, and the object of its proposed introduction was not for the purpose of comparison under the act of 1880, but to affect the degree of credit to be given to the testimony of the expert witnesses.

The defendant had been in the employ of the owner of the burned barn as coachman and gardener, and was discharged some three months before the fire because of the ill feeling between him and the servant girl.   He was familiar with the location and arrangement of the barn and other buildings upon the premises, and knew that a poisonous preparation, called London Purple, was kept on a cupboard in the barn, and he had used it in spraying vines and for the destruction of insects in the garden. The People were permitted to prove, under defendant's objection, that upon the night of the fire, and before it occurred, a span of horses and a pony and cow, kept in the barn and belonging to the owner, were poisoned with London Purple and all died shortly afterwards; that his carriage in the same barn was hacked and the cushions and curtains cut into shreds; that his carriages and cutters in an adjoining carriage house were cut and damaged; but his brother's cutters and carriages in the same barn were not injured.   The evidence was sufficient to support the inference that the malicious injury to the personal property was done upon the same night that the fire occurred and by the incendiary, and as a part of the criminal scheme which resulted in the destruction of the barn.   Under such circumstances the evidence was competent.   Hope v. People, 83 N. Y. 427.   It very clearly tended to prove that the fire was not accidental; that its origin was instigated by malice and not from the desire of gain; that it was kindled by some person having the intimate knowledge of the defendant in regard to the situation of the property, and it was properly received, even though it may have tended to establish the defendant's guilt of another crime than the one set forth in the indictment on trial.

There is no other exception in the record requiring attention, and the judgment of conviction should be affirmed.

All concur.