(11 Misc. Rep. 328.)

### PERKINS v. BRAINARD QUARRY CO.

(Common Pleas of New York City and County, General Term. February 4, 1895.)

1. FACTORS AND BROKERS—COMMISSIONS—EMPLOYMENT BY BOTH PARTIES.
    In an action for broker's commissions for effecting a sale of land it may be shown as a defense that the broker was in the employ of the purchaser also.

2. PLEADING—DISMISSAL OF ANSWER.
    An answer cannot be dismissed at the trial.

3. TRIAL—OBJECTIONS TO EVIDENCE.
    Where a question was not objected to until it had been answered, and there was nothing to prevent the objection being made at the proper time, it will not be considered.

4. NEW TRIAL—SURPRISE—RULING OF TRIAL JUDGE.
    A new trial will not be granted on the ground that the party was surprised by the ruling of the trial judge on points of law.

5. SAME—AFFIDAVITS OF JURORS.
    Affidavits of jurors are not admissible to show that the jury disregarded the issue as presented, and found the verdict on another and different issue.

Appeal from trial term.

Action by Frank P. Perkins against the Brainard Quarry Company for broker's commissions. From a judgment entered on a verdict in favor of plaintiff, and from two orders,—one denying a motion for a new trial on a case and exceptions, and the other denying a motion for a new trial on the minutes,—plaintiff appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and GIEGERICH, JJ.

W. T. Birdsall, for appellant.

Jacob Fromme, for respondent.

GIEGERICH, J. This action was brought by the plaintiff, as assignee of one Luman W. Johnson, for commissions alleged to have been earned by the latter, as a real-estate broker, in procuring a purchaser to make an exchange of certain bonds for defendant's real estate. The answer, among other things, sets up that about the time mentioned in the complaint,—i. e. on or about the 1st day of April, 1892,—Johnson was introduced to the president and one of the directors of the defendant corporation as being the agent of cer-

tain parties for the exchange of first mortgage bonds of the New
York & Perry Coal & Iron Company for New York improved real es-
tate; that Johnson refused to give the names or reveal the identity
of the owners of said bonds; that Johnson stated to said president
and director that said bonds bore interest at 6 per cent. gold, that the
issue was $600,000, and that the interest was payable on the 1st days
of May and November in each year, and that up to that time all
interest upon said bonds had been paid when due, and that the
accruing interest, due on May 1st, would be paid; that Johnson re-
ferred said representatives of defendant to one J. H. Davis, as to the
value of the bonds, and also stated that the bonds, which were listed
on the stock exchange, were quoted at $94\frac{1}{2}$; that Davis referred the
defendant's agent to one Mr. Brouwer, who informed the latter that
the interest upon the said bonds had always been paid, and that the
interest which would become due on May 1, 1892, following, would be
paid, as the company had the money to pay the same in its treasury;
that Brouwer further said that the bonds sold on the exchange for
91, or thereabouts; that the property of the company, consisting of
coal mines and blast furnaces, was in fine order, but that work had
been stopped to build charcoal furnaces, which had been done at an
expense of $250,000, which had been paid; that a Mr. Havemyer and
a Mr. Bloodgood had each bought large amounts of said bonds, which
they held as an investment; that the works of the company were
about to start up, and that they were in a first-class running order;
that, in reliance upon the representations so made, the defendant's
president shortly thereafter had an interview with Johnson, to whom
he said that defendant would exchange the property mentioned in the
complaint, subject to mortgages for $150,000, for 70 of said bonds,
and asked Johnson to disclose the name of the person for whom
he was acting, which he still declined to do; that thereupon a con-
tract for the exchange was drawn up, and at Johnson's request the
name of Charles T. Galloway was inserted as the party who was to
make the contract, Johnson at the same time saying that Galloway
was not the real party in interest, but merely a dummy; that John-
son took the contract away to be executed by Galloway, but brought
back another copy of the contract, with the name of one Elihu Mit-
chell substituted for that of Galloway, and again stated that Mitchell
was but a dummy, and declined to say who the real party in interest
was; that, after the execution of the contract, the defendant learned
that said representations as to the payment of interest on the bonds,
and the purchase for investment, and the condition of the property,
were untrue, and that the sale of said bonds alleged to have been
made were fictitious sales, known on the stock exchange as "wash
sales"; that Brouwer was the real party in interest in said contract,
whose agent Johnson was, and that Mitchell was a clerk in his office;
that in an interview with the defendant's president and Brouwer, upon
the discovery of such false representations, it was admitted that the
representations of Johnson were untrue in regard to payment of inter-
est upon the bonds, and that thereupon the said contract was canceled;
that through its officers it informed Johnson that it relied upon his
representations aforesaid about said bonds, and would not, in any

event, take said bonds in exchange if interest had been defaulted upon them, or if the interest thereafter accruing would not be paid when it became due; that in reliance of the representations of Johnson that said interest had been paid, and that it would be paid in the future, it made the said contract with Mitchell. The proofs taken upon the trial amply sustain the above allegations of the answer. It was proved, among other things, that the defendant's president distinctly told Johnson that the defendant would not take any bonds unless they were live bonds,—bonds that could be used, and bonds that were paying their interest,—and Johnson replied that the bonds were listed bonds; that they sold for 94½; they paid 6 per cent. interest in gold; that the interest for the May coupons was already in the Farmers' Loan & Trust Company's office. These representations were denied by Johnson, but the jury, by their verdict, have credited the defendant's version of the transaction.

The appellant contends that these proofs should not have been received, because the matters in respect thereto were not set forth in the answer; but no such objection was made at the trial, nor could it be successfully urged. It was also disclosed upon the trial that Mitchell, who signed the contract for the exchange of defendant's real estate, was not the real party in interest, but that his employers, Brouwer & McGown, stockbrokers, were, and that he signed the contract at their request, without knowing with whom the contract was made.

Johnson, upon cross-examination, testified, without objection, that he was employed by Brouwer & McGown to dispose of the 70 bonds mentioned in the contract, and then this question was put to him by defendant's counsel: "Q. What pay were you to have from Brouwer & McGown?" This was objected to, on the ground that there is no allegation in the answer that any payment was to be made by the defendant. The objection was overruled, and plaintiff's counsel excepted to the ruling. The witness answered that he was to have 2½ per cent., and that he disclosed this to the defendant's president before the contract was signed. Counsel for the appellant insists that error is predicable of the admission of the evidence in question. The answer, it will be recalled, sets up that Johnson was the agent of the real party in interest, Brouwer. It was therefore proper, in view of this and other questions raised by the answer, to show that the agent took upon himself incompatible duties and characters, or acted adversely to the interests of the defendant. Carman v. Beach, 63 N. Y. 97, 100; Murray v. Beard, 102 N. Y. 506, 508, 7 N. E. 553. The doctrine of these cases was recently reiterated by the court of appeals in the case of Knauss v. Brewing Co., 142 N. Y. 70, 74, 36 N. E. 867, cited by appellant's counsel, in which the court, through Peckham, J., at page 77, 142 N. Y., and page 867, 36 N. E., say:

"In regard to the subject of the double employment, if it be of a nature whereby possibly the interests of the parties may be diverse, we agree that it cannot be upheld, if concealed from knowledge."

The defendant's president testified that Johnson never told him that Brouwer & McGown had employed him to transfer or sell those bonds, or to get anything in exchange for them, and that he was to

receive a commission from them.   He further testified that he knew nothing about Brouwer & McGown until the day that the deed was to be exchanged; and the jury, by their verdict, found that the fact that Johnson was to receive commissions from both parties was not disclosed to the defendant.

It also appeared upon the trial that when the defendant ascertained that the statements made by Johnson were false, it abrogated the contract with Mitchell, and he, on instruction of his employers, Brouwer & McGown, consented thereto.   Upon the rendition of a verdict in favor of the defendant, the plaintiff moved upon the minutes to set aside the verdict and for a new trial, which was denied, and subsequently another motion was made upon the grounds hereinafter stated, which was also denied, and from the orders entered denying said motions the plaintiff has taken this appeal.   There were but three exceptions taken to the admission of testimony, one of which we have already considered, and the others we will consider hereafter.   There was no exception taken to the exclusion of any testimony, or to the judge's charge.

After the plaintiff had rested, and the defendant had opened the case, the former moved for judgment on the answer, which was denied, and plaintiff noted an exception.   We are of the opinion that the motion was properly denied, as the facts stated in the answer constitute a good defense.   Besides, under the decision of the court in Moss v. Witteman, 4 Misc. Rep. 81, 23 N. Y. Supp. 854, it is error for the court to dismiss an answer at the trial.

Brainard, the defendant's president, testified that he became acquainted with Johnson soon after the 1st day of April, 1892, and then he was asked by plaintiff's counsel how and where he got acquainted with him, and to state just what the conversation was. This was objected to, on the ground that it was not allowable under the answer.   The objection was overruled, and plaintiff's counsel excepted to the ruling.   The question was a proper one under the pleadings, and was merely introductory of the matter set up as a defense, as the response thereto shows.   Brainard was also asked this question:

"Q. Did you have a conversation with Mr. Brouwer in reference to the representations made to you by Mr. Johnson in reference to the interest?   A. I did.   Defendant's Counsel:  I object to that."

The objection was overruled, and plaintiff's counsel noted an exception.   As it appears from the record that the question was not objected to until the answer had been given, and there being nothing to show that the objection could not have been made, the objection should not be considered.   2 Rice, Ev. p. 919, § 359, and citations; Baylies, Trial Prac. p. 200, and citations.   Moreover, as no ground of objection was stated, the objection would have been disregarded, even if the question had not been answered.   Baylies, Trial Prac. p. 201, and citations; Bergmann v. Jones, 94 N. Y. 51; Turner v. City of Newburgh, 109 N. Y. 301, 16 N. E. 344; People v. Murphy, 135 N. Y. 450, 455, 32 N. E. 138.   But assuming, for the sake of argument, that the objection was sufficient in form, it is apparent that the evidence in question is pertinent to the defense set up in the answer.

After the entry of the order denying the motion made upon the minutes to set aside the verdict and for a new trial, the plaintiff made another motion, at special term, on the settled case on appeal, and on affidavits upon the grounds of surprise and newly-discovered evidence, which, after very careful consideration by the learned trial judge who presided thereat, was denied.   To constitute a case for a new trial upon the ground of newly-discovered evidence, it must appear that the evidence has been discovered since the trial; that it could not have been obtained upon the former trial by the exercise of reasonable diligence; that it is material to the issue, and goes to the merits of the case, and not merely to impeach the character or credit of a former witness; that it is not merely cumulative; and that its character is such that it would probably have changed the result.   When all these facts appear, and the court is satisfied that the ends of justice will be promoted by allowing the moving party an opportunity to present the newly-discovered evidence, the motion will be granted.   Baylies, New Trials & App. 524, 525, and citations; Grah. & W. New Trials, p. 1021; Glassford v. Lewis, 82 Hun, 46, 48, 31 N. Y. Supp. 162.   We think that, under the circumstances of the case as disclosed by the appeal book, and tested by the foregoing rules, the court below properly denied the motion for a new trial, and in doing so wisely exercised the discretion vested in it.

One of the grounds on which a new trial is asked is surprise in relation to the rulings of the trial judge upon points of law.   This affords no ground whatever for granting the application.   Giraudat v. Korn, 8 Daly, 406; Anderson v. Bank, 66 How. Pr. 8.

Another ground is that since the trial the appellant has learned that Brouwer & McGown, after the execution of the contract, became convinced that they had made a bad bargain, and the value of the flats was not as stated, and appellant endeavored to show by their affidavits that there was a scheme on their part to relieve themselves from the obligations of the contract made in their behalf by their employé, Mitchell, and in the latter's name, because they thought the bonds were of greater value than the property, and that, in consequence thereof, they induced the defendant company to cancel the contract, and sell the property to one Van Schaick for less than it had agreed to sell the same to Mitchell; but Brouwer, who was called as a witness for the defendant, testified that his reason for desiring to cancel the contract was:

"We had intended to convey this property to individuals to whom we owed money, and where we had pledged these bonds; and the people declined to take the property, and we could not carry out our contract."

He further testified:

"I never mentioned that to Mr. Brainard. I told him that the coupons would not be paid, and that I was willing to abrogate the contract on that ground, and that the representations which were made by Johnson were not true. * * * I told Mr. Brainard the company would not pay its interest; that the company would not pay, and did not pay; and that is true. The company is now in the hands of a receiver."

In view of the contradictory testimony given by the witness at the trial, the court below held that a new trial could not be granted

upon his affidavit and that of McGown, his partner. This ruling is amply supported by the authorities. In the case of Duryee v. Dennison, 6 Johns. 249, the witness had made statements inconsistent with his evidence, and Kent, C. J., in denying the motion for a new trial, said "that it would be productive of the most dangerous consequences if a verdict should be set aside because a witness had made a mistake in giving his evidence." The principle of the decision in this case has been applied in numerous cases, among which are Powell v. Jones, 42 Barb. 24; Carpenter v. Coe, 67 Barb. 411; and Nelson v. Neil, 12 Wkly. Dig. 161. The ruling finds further support in the fact that the alleged newly-discovered evidence, by reason of its contradictory nature, was of such a character that it would not have changed the result upon a new trial, if one had been ordered.

The record fails to disclose any evidence of collusion between the defendant company and Brouwer & McGown. The contract made by the defendant company with Van Schaick was fully inquired into upon the trial, and it was shown that it was of a character entirely different from that which Johnson, plaintiff's assignor, had been employed to effect; and therefore no recovery for commissions, by reason of it, could be had in this action. The motion is also based upon the ground that the plaintiff's attorney, who was present at the trial, was suffering from ill health, and therefore unable to instruct counsel as fully as he might have done, and otherwise to protect his client's interests. These statements, if unchallenged, would furnish no ground for the granting of a new trial, but, in this connection, the learned trial judge said:

"There was no suggestion at the trial that the plaintiff's attorney was unable to proceed. The plaintiff was represented by able counsel, and his interest was fully protected. Plaintiff's counsel was present, and assisted at the trial."

This clearly indicates that there was no surprise.

The jury were instructed to find for the plaintiff if they believed there was no representation as to the money for the May interest being in the trust company; and, if they found that the defendant knew that Johnson, plaintiff's assignor, was to get a commission from the other party, the verdict should be for the defendant. Affidavits were presented from several jurors "that the jury did not take into consideration every question of double commissions or the representations of Mr. Johnson, but decided as they did solely because they believed the bonds offered were of little value, and that the defendants were parting with $220,000 worth of property for practically nothing." Public policy forbids the introduction of jurors' affidavits to prove anything which may have transpired in the jury room while consulting on their verdict. This rule excludes affidavits to show mistake or error of the jurors in respect to the merits, or irregularity or misconduct, or that they mistook the effect of their verdict, and intended something different. Dalrymple v. Williams, 63 N. Y. 361; Grah. & W. New Trials, p. 1432. This is not a case where the jury have by mistake announced a verdict different from that agreed to by them, but here it is sought to be shown by the introduction of the affidavits in question that the jury disregarded the is-

sue as presented, and found the verdict upon another and different issue. This cannot be done under the rules above stated. For these reasons the judgment and orders appealed from should be affirmed, with costs. All concur.