---

(76 Misc. Rep. 394.)

### In re JACOBS' WILL.

(Surrogate's Court, New York County. April, 1912.)

1. WITNESSES (§ 46*)—COMPETENCY—COMMISSION OF CRIME.

Under Code Civ. Proc. § 832, providing that a person who has been convicted of crime is nevertheless a competent witness, the fact that witnesses are engaged in the business of professional sporting bookmakers, which is unlawful, does not render them incompetent, but goes only to the credibility of their testimony.

[Ed. Note.—For other cases; see Witnesses, Cent. Dig. § 108; Dec. Dig. § 46.*]

2. WILLS (§ 302*)—PROBATE—SUFFICIENCY OF EVIDENCE.

Where, after a widow has been appointed administratrix of her husband's estate, on petition showing that he died intestate, and she has acted in that capacity for over a year, she offers for probate a will giving all his estate to her, and upon a contest as to its genuineness all the circumstances concerning its custody are inconsistent with the testamentary character, and the testimony on every issuable fact is controverted, she has· not sustained the burden of proof resting on her, and probate will be denied.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 575, 581, 700–710; Dec. Dig. § 302.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WILLS (§ 289\*)—PROBATE—BURDEN OF PROOF.

The burden of proving to the satisfaction of the surrogate the genuineness of a will and the validity of its execution rests on the proponent.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.\*]

4. WILLS (§ 293\*)—PROBATE—ADMISSIBILITY OF EVIDENCE.

In a testamentary cause, the surrogate is entitled to consider the facts regarding the custody and production of the testamentary paper; that is, from whom and whence it came.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 666–672, 675–678; Dec. Dig. § 293.\*]

5. EVIDENCE (§ 60\*)—PRESUMPTIONS—INNOCENCE.

The proponent of a will, the signature to which is alternately sworn to be a forgery and genuine with equal freedom, is entitled to the benefit of the presumption of innocence, though such presumption is not strictly applicable.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 81; Dec. Dig. § 60.\*]

Proceedings on the probate of the last will of Henry Jacobs. Probate denied.

Samuel J. Siegel, for proponent.

Hamilton, Gregory & Freeman, for contestant.

FOWLER, S. This in one respect is a most unusual case in this tribunal. As stated in the written brief of counsel, submitted in behalf of proponent:

"The testimony * * * is most conflicting, almost every fact testified to by any of the witnesses being contradicted."

This frank and justified statement by proponent's own counsel is very significant on a contested probate, where the burden of proof, by established authority, rests so strongly on the proponent throughout the trial. For more than a year past the proponent has been acting as the administratrix of her late husband, Henry Jacobs. The sworn petition for the widow's appointment disclosed that Henry Jacobs died intestate or without a will. It was only after a long course of administration by the widow, and after trouble and altercation had developed between those entitled, pursuant to the statute of distributions, to succeed to the estate of Henry Jacobs, that the paper propounded was discovered, under circumstances which, to say the least, are unusual. These circumstances in themselves tend to excite some suspicion, in view of the proofs, concerning the genuineness or sufficiency of the testamentary paper propounded. The mere appearance of the paper after such a lapse of time naturally caused some surprise to the father of deceased, who had long been led to suppose himself entitled to one-half of his son's property, under the statutes of this state controlling the division of such property in the event of intestacy. The father now earnestly contests the genuineness and validity of the paper in question, on this proceeding to probate it, and so successfully that proponent's own counsel concedes that the testimony on every issuable fact in the cause is controverted. And it is so.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs., 1907 to date, & Rep'r Indexes

[1] The late Henry Jacobs, the alleged testator, was proved beyond all controversy to have been in his lifetime, by occupation, a professional sporting book-maker. His accounts, given to some extent in evidence, disclose the varying success of this now unlawful, but lucrative, occupation. It naturally followed that Henry Jacobs' intimate associates during life were those who followed the same occupation, and some of them appeared on the witness stand and frankly admitted that their calling, at the times involved in the evidence, was the unlawful one mentioned. This established fact is asserted by proponent to go to the credibility of such witnesses, and the widow, here the proponent, presses this point upon me with so much insistence that I am obliged to give it due consideration in weighing the evidence. In many countries, where racing is encouraged, book-making per se is not unlawful. But it is proscribed here (Penal Law [Consol. Laws 1909, c. 40] § 986), and the conceded infraction of our law by a witness may go to his credibility, and to some degree bears upon the weight of his testimony. But, as the contestant's witnesses also were necessarily drawn from his own station in life, I do not think I should be justified, even if the witnesses are disparaged, in disregarding such portion of their testimony as is consistent with the circumstantial evidence apparent in the cause. I know of no rule which disqualifies such witnesses from testifying to facts within their own knowledge. Code Civ. Proc. § 832. The concededly lawless character of their occupation goes only to their credibility. To this qualification of their evidence I have, as demanded, given due weight and consideration.

[2] But if the contestant's evidence is tinctured by some marks which go to its probative quality and effect, the same is true to some extent of the evidence offered to me upon the part of proponent. One of the two attesting witnesses to the alleged will is sought to be impeached as a person unworthy of belief, and witnesses familiar with his general reputation in the community in which he lives have sworn that they would not believe him under oath. The other attesting witness, while not impeached directly, became an attesting witness to the will under circumstances which, if true, are so unnatural as to be most suspicious in themselves. In this cause the genuineness of Henry Jacobs' subscription to the alleged will is not only disputed, but the evidence in regard to it is baffling beyond all precedent familiar to me. It is alternately sworn to be a forgery and genuine, with equal freedom. So proofs of the "alibi" of Henry Jacobs on material occasions, such as the date of execution, have been freely established and as freely disproved by the deliberate oaths of the different witnesses, so much so as to make all certitude as to the real fact absolutely impossible. The testimony on all points at issue is as completely at variance as a universal affirmative on the one side and a universal negative on the other can make it. There is no shade of agreement on any one point.

It is sworn on the part of the widow, who at this late day produces the will and who is the proponent here, that she lately found the will in Chicago in a little modern writing desk, formerly in the apartment of Henry Jacobs in this city. It was not a desk of the old pattern,

with secret drawers or hidden receptacles, but a plain, common desk. This desk, after Henry Jacobs' death, had for some space of time been in constant use by the widow, and when she broke up her home here she sent it on to her brother in Chicago, where she frequently was. There the desk stood in a frequented room of this brother's house. Long after the letters of administration to the widow, and when friction between the families of the widow and her husband was most acute, the widow says she found the alleged will in this familiar little desk in Chicago. This will gives all the husband's estate to her. On the part of the contestant it is sworn that the desk in question was thoroughly searched in New York after Mr. Jacobs' death and that it then contained no such testamentary paper as that now propounded.

But what of the paper itself? This paper on its face certainly contains one singularity: It purports to be witnessed by a person whose only permanent residence was in Chicago, a man who had rarely been in New York, and who was a friend of the widow's brother residing in Chicago. This witness was not a friend of deceased, who lived in New York. On an accidental, rare, and curious visit to New York, with no real motive assigned for such visit, this attesting witness says he by chance met Henry Jacobs in the street, and he then went to Mr. Jacobs' apartment and there witnessed this will. This attesting witness was in New York but once in some years, and then, by his own account, only for a few moments or hours, when he returned immediately to Chicago, whence he came. During his brief sojourn in this city he stopped nowhere, slept nowhere, and had no real business here, and during his brief stay he saw no one except the alleged testator and the other attesting witness, and them he met casually while strolling in the street of this vast city. The fact may be as this witness states, and, although the incident is so strange, I cannot say that it is impossible. But it is controverted on the part of the contestant by an alibi for the alleged testator, Henry Jacobs, on the very evening of the alleged execution of the will. This alibi, sworn to by all the intimate associates of Henry Jacobs, on the day of the alleged execution, is complete, if the witnesses to it are to be believed. According to them Henry Jacobs was elsewhere at the moment assigned by proponent for the execution of the paper. That the alleged testator could have been at two places far apart at the same moment is impossible.

The testimony of the other attesting witness to the alleged will is sought to be impeached by contestant, and with some effect. He also had some association with the widow rather than with the alleged testator. But the most serious issue of all concerns the genuineness of Henry Jacobs' alleged signature to the paper in question. His associates, one and all, denounce it as a forgery, while only the experts called for the widow insist that in their opinion it is genuine. These experts were bank clerks, and apparently not very expert. The proponent, by a curious resort to a stratagem, justified by the law of this state (People v. Murphy, 135 N. Y. 450, 455, 32 N. E. 138; Hoag v. Wright, 174 N. Y. 36, 43, 66 N. E. 579, 63 L. R. A. 163),

produced on the trial a simulated signature of Henry Jacobs, made it is said in her presence for the purposes of cross-examination. This test was unfortunate for proponent in this cause, for her own experts on the stand hesitated about denouncing this conceded imposture, although they had been instructed in advance that it would be shown to them as the first of a series of signatures, the others of which would be genuine. These experts were not, however, professional experts, although they were perfectly competent witnesses to handwriting. I must say that the facility by which this conceded imposture was fabricated in the presence of the widow herself did not impress me favorably with the evidence adduced to establish genuineness of the signature to the will. Although such a test, as a comparison with a spurious signature, is authorized on cross-examination by the adjudications of this state, I confess that I was particularly relieved when this pseudo signature disappeared from my sight. It seemed to me that this conceded imposture·had been produced in the presence of the widow herself with a suggestive facility startling to the moral sense. And yet I cannot criticise it, for in this state such conceded impostures are allowed to be used on the cross-examination of experts. People v. Murphy, 135 N. Y. 450, 32 N. E. 138; Hoag v. Wright, 174 N. Y. 36, 66 N. E. 579, 63 L. R. A. 163. But it was a resort to a dangerous expedient in this cause, for it almost destroyed proponent's own experts, and the contestant then called none, relying in this particular on the evidence of the ordinary associates of Henry Jacobs, who were most familiar with his handwriting.

I have indicated enough of the testimony and its character to demonstrate that the evidence before me in this probate cause is very confused. Whichever way I examine a material fact, I am confronted with a strenuous sworn affirmation of it on the one hand and an equally strenuous sworn denial of it on the other. In consequence I am unable to find any fact alleged by proponent, without the most serious disregard of the sworn testimony offered by the contestant. Both versions cannot be true; one must be false. But which? This is the enigma. This cause is in any event a sad example of the infirmities of human testimony, although given in a court of justice, under the most solemn adjuration. While I am always unwilling to indulge in harsh criticism of suitors who resort to this court, and am prone to make great allowance for the weaknesses, the imagination, the obtuseness, and the forgetfulness of ordinary witnesses, I cannot allow the parties in this cause to depart from this place under the mistaken impression that such serious discrepancies as those here apparent in sworn testimony have not been noticed by me. I owe this observation at least to the dignity of legal procedure and to the requirements of the corporate state whose procedure it is.

[3] The true solution of such a difficult situation as that just depicted is, I think, to be found in the application of certain relative presumptions frequently applied in this court. The burden of proving to my satisfaction the genuineness of the will and the validity of its execution rests on the proponent alone. Code Civ. Proc. § 2622; Crispell v. Dubois, 4 Barb. 393; Matter of Kellum, 52 N. Y. 517; How-

land v. Taylor, 53 Id. 627; Rollwagen v. Rollwagen, 63 Id. 504, 517; Matter of Van den Heuvel, 76 Misc. Rep. 137, 136 N. Y. Supp. 1109. This means that the burden of proving with particularity, by good and sufficient evidence, the factum of will rests on proponent. I can be satisfied within the meaning of the statute, by no less evidence than evidence of such weight and character. If I am satisfied by less evidence, I err in law. Now how has the proponent discharged this burden in this cause? By concession of her own counsel, which I referred to at the outset, I think she has inadequately discharged the burden resting on her.

[4] In a testamentary cause the surrogate is entitled to consider the facts regarding the custody and production of the testamentary paper; i. e., from whom and whence it came. Miller v. Brown, 2 Hagg. 209; Braham v. Burchell, 3 Add. 235. At times such custody is most important if the genuineness of a document is at issue. Taylor, Ev. § 660. Now, it appears in this cause that it was only long after the death of Mr. Henry Jacobs, the alleged testator, that the script purporting to bear his signature came to light, and all that time, constructively at least, it was in the proponent's own custody in a desk belonging to her. Had the disputed script been produced from a fast-locked repository of the alleged testator's own, to which none other had access, this would have been a most important fact for my consideration. But it was not shown to be so. All the circumstances relative to the custody of the writing propounded, from its inception to its production, are inconsistent with a testamentary character. The alleged testator took no care of it whatever. He neither put it away nor locked it up. In other words, all the circumstances shown concerning the custody of the paper in question make against the paper, rather than for its validity. It is always within my jurisdiction to inquire particularly into the circumstances attending the possession and custody of a testamentary paper propounded to me as a will. Code Civ. Proc. § 2622.

[5] I do not, however, find that the will produced in this cause is a forgery, for that is not established. I say this because I am unwilling that the wdow should rest under any unjust imputation on this point. While I do not in strictness apply the presumption to this cause, and do not place any conclusion on it, yet to my mind the presumption of innocence should always be considered in a civil cause, if for no other reason than due consideration to the tranquil and orderly conduct of human affairs, although this is in substance, but I think not in essence, denied in this and a few other jurisdictions. The extent of the presumption of innocence in civil causes is sometimes, I believe, misunderstood. It is the rule in England that wherever a charge of crime is involved, whether it be collaterally in a civil case, or directly in a criminal case, the burden of proving guilt beyond reasonable doubt lies on the person who asserts it (Williams v. East India Company, 3 East, 192; Ross v. Hunter, 4 T. R. 33; Best, Ev. [3d Am. Ed.] § 346); whereas in this state it is held that if an assertion of crime is made in a civil suit, or collaterally, in other words, a mere preponderance of evidence will suffice to establish it.

Seybolt v. N. Y., L. E. & W. R. Co., 95 N. Y. 562, 47 Am. Rep. 75; Farmers' L. & T. Co. v. Siefke, 144 N. Y. 355, 39 N. E. 358; Kurz v. Doerr, 180 N. Y. 88, 72 N. E. 926, 105 Am. St. Rep. 716, 2 Ann. Cas. 71; Johnson Service Co. v. Maclernon, 142 App. Div. 677, 679, 127 N. Y. Supp. 431.

It is the rule of New York on this point which, of course, is binding on me. Every court of original jurisdiction is bound absolutely by the authoritative precedents established by the highest courts of the state, but only to the extent that such highest court in turn is bound by its own decisions. But the declaration of the Court of Appeals in regard to the presumption of innocence I conceive to concern the weight of evidence only in civil cases, and I do not deem it a pronouncement, as some do, that in civil causes there is no presumption of innocence whatever. A total disregard of this great presumption in civil causes would be contrary to all reason. It would tend to substitute a presumption of guilt in civil cases for a presumption of innocence; for, if in civil cases there were no presumption either way, a litigant might have the burden of proving his own innocence in the first instance, which is a conception shocking to the legal sense, and contrary to the principles underlying the development of the common law and any procedure based on it. Williams v. East India Co., 3 East, 192; Collyer v. Collyer, 110 N. Y. at page 486, 18 N. E. 110, 6 Am. St. Rep. 405; Matter of O'Sullivan, 122 App. Div. 527, 534, 107 N. Y. Supp. 462; Matter of Mara, 137 N. Y. Supp. 151.

The rationale of the common law is regarded as the safety of the institutions of the state, and this most salutary presumption of innocence of crime is a fundamental part of the common law. In a republic, where denigration of character is a characteristic phenomenon, by reason of operative causes well understood by students of institutions, no other presumption of the common law is more important than that of innocence. To my mind, the proponent is entitled to the benefit of it. The cases I have cited go to the weight of evidence, not to the denial of the maxim itself in civil causes. But, whether my reading of the applications is or is not accurate, it is not upon this point that I rest my judgment.

The proponent has failed to fulfill the burdens resting on her in this cause, and I am unable to find from the controverted evidence that the script propounded is in truth and in fact the last will and testament of Henry Jacobs, deceased. The probate sought is therefore denied.

Decreed accordingly.