## THE STATE v. STAIR *et al.*, *Appellants.*

1. **Criminal Law**: EVIDENCE: CLOTHING WITH BLOOD STAINS. On a trial for homicide, it is proper to admit in evidence and to permit the jury to inspect clothing worn by the accused on and soon after the day of the commission of the crime and having thereon blood stains. The fact that such garments cannot be filed with the bill of exceptions is no reason for excluding them, the descriptive evidence being sufficient to enable the court to pass upon the competency of the evidence.

2. ———: ———: IDENTITY OF HANDWRITING. A paper, claimed to be in the handwriting of the defendant, is sufficiently proved to go to the jury, where a witness called to identify it testifies that he had seen defendant write two or three notes and sign his name

to another, that he thought he could tell defendant's handwriting, and that he judged the paper shown him and afterwards read in evidence was in defendant's handwriting ; tha the was not positive, but so judged from a comparison of the writing with his memory of what defendant wrote.

3. **Evidence :** WRITING FOUND IN POSSESSION OF ACCUSED. Where one of two joint defendants was arrested for murder, there was found, in a pocket-book in his possession, a paper with the following words in his handwriting : "Do you think it safe to kill them and wrap them up in the clothes and tell that they went off in a buggy." *Held*, that this writing was competent evidence against said defendant in whose possession it was found, the proof tending to show that he acted on the suggestion contained therein.

4. —— : ——. Such writing, however, was not competent as against the other defendant, the wife of the one in whose possession it was found, it not being shown by the state when it was written or that she had any knowledge of it, and it not being proved to be a part of the *res gestae*.

5. **Supreme Court Practice :** SEPARATE REVERSALS. The defendants having been separately arraigned and sentenced, although tried together, the verdict is a separate finding as to each and the judgment may be affirmed as to one and reversed as to the other.

*Appeal from Vernon Circuit Court.*—HON. J. B. GANTT, Judge.

AFFIRMED AS TO HENRY S. STAIR.

REVERSED AS TO NANNETTIE STAIR.

*E. C. Martindale* and *Scott & Hoss* for appellants.

(1) The verdict is against the evidence, especially is this so as to defendant, Nannettie Stair. (2) The verdict is against the law as declared in instruction number three given by the court, for the evidence fails to show that the wound on the back of the neck was made with a hatchet. (3) The court erred in permitting the paper, claimed to have been written by Henry Stair, to be read in evidence. The knowledge of the witness of the handwriting of Stair was insufficient to identify the paper as having been written by the latter. Besides his opinion was partially based on a comparison with other

papers not admitted to be genuine and not of record in the case. (4) The paper at most should not have been admitted against defendant Nannettie. There was no evidence that she ever saw it or had it in her possession. The court should not have admitted in evidence the dress with blood stains on it. Such evidence cannot be preserved in the bill of exceptions so as to enable this court to review it. *Ibinger v. State*, 53 Ind. 251; 34 Md. 216; *Brown v. Foster*, 113 Mass. 136; 33 Ind. 187. Besides the blood was not shown to have come from the wound of a human being. (5) It was error to tell the jury they *should* consider, in weighing the evidence, the interest of the witnesses, their demeanor on the stand, etc. (6) The court should have given the instruction asked by defendant, Nannettie, as to an accessory after the fact.

*B. G. Boone*, Attorney General, for the state.

(1) The indictment is without defect and the instructions given on the trial cover every branch of the law applicable to the evidence, and are such as have been repeatedly approved by this court. (2) While the testimony as to the defendant's guilt was wholly circumstantial, yet it pointed with unerring certainty to defendants as being guilty of an inhuman murder. (3) The court rightly admitted the paper found in the pocket of Henry Stair as against him. It was sufficiently identified as being in the latter's handwriting by the witness, Rockwood, and tended to show a confederation and conspiracy, implicating more than one person in the crime. (4) There was no evidence that connects defendant, Nannettie, with the paper just referred to and it is submitted that as to her its admission in evidence was reversible error.

*H. H. Blanton* also for the state.

(1) The paper found in the pocket of Henry Stair was properly identified by the witness Rockwood. *State v. Scott*, 45 Mo. 304 ; 1 Greenlf. Evid. 576. (2) Defendants' general objection to the paper was rightly overruled because being competent against one defendant, the state could not be deprived of its use because incompetent as against the other. *State v. Talbott*, 73 Mo. 359. Defendant, Nannettie, should have asked an instruction at the trial limiting the effect of the paper as against her. Besides the paper was competent as against Nannettie. The jury was warranted in inferring from the evidence that it had been written by Henry and shown to her while out at the camp at a time when it was not convenient for defendants to talk about the proposed killing for the reason that they might be overheard. It was no error for the court to fail to give on its own motion an instruction so limiting the effect of said paper writing as to defendant, Nannettie, because it related to a collateral matter as distinguished from one defining the crime or grade of crime. *State v. Kilgore* 70 Mo. 558.

BLACK, J.—The defendants were jointly indicted and tried, the defendant, Henry S. Stair, for killing Jacob Sewell, and Nannettie for being present, aiding and abetting in the murder. They were both found guilty and sentenced to be hanged. The evidence as to the killing is circumstantial only. Jacob Sewell, the deceased, was advanced in years, and he and his son were camping near Nevada. They had with them an old and a new wagon, four horses or rather ponies, a few old plows, some bedding, dishes and the like. Defendants were, for the time, living at Nevada. Jacob Sewell called to see them, and they visited him and his son at their camp. De-

fendants were at the camp on the night of the fifth of August, 1885, and on that night Sewell and his son were both murdered. Defendants were again at their house that night; during the night or early in the morning they drove the wagons and teams by their house, got some articles, and then drove out from Nevada a few miles and camped in or near the woods that day. The bodies of the deceased persons were found near' this camp in the brush, covered up with an old sack and leaves. The evidence tends to show that the dead bodies were dragged from the wagon to the place of deposit. A hatchet with blood and hair upon it and some articles of clothing were also found at this same camping ground.

After the arrest a knife was found in Henry S. Stair's coat pocket with blood upon it. Wounds were found upon the head and neck of Jacob Sewell, one upon the head having the appearance of having been made with the pole of an ax, and another upon the neck which appeared to have been made with a knife, either of which, it is said, was a mortal wound. The defendants were arrested on the seventh of the same month, on the road, then having the horses, wagons, etc., in their possession; one wagon was covered and in it were found bloody articles of clothing and bedding. There were many more circumstances in proof which need not be detailed.

Error is assigned in the admission of evidence on behalf of the state in the following respects: Two dresses of Nannettie Stair, one worn by her on the day of her arrest, and the other on the day of homicide, with some other articles of clothing, all of which were found upon her person or in the wagon, and all of which had blood stains upon them, were introduced in evidence and inspected by the jurors. These stains constituted a part of the chain of circumstances relied upon by the state. Such stains upon the person or clothing of the parties accused have always been re-

cognized among the ordinary evidences of homicide. They may be shown by inspection of witnesses, or by the inspection of the jurors. This, it is said, is the common practice in criminal courts. *People v. Gonzales*, 35 N. Y. 60; Whart. Crim. Evid., sec. 312. It was as competent for the jurors to get this information by their own sight as it was to get it through the 'medium of witnesses. They received this information in this case in both ways. The argument that these garments were not and could not be filed with the bill of exceptions, and, therefore, should not have been examined by the jurors, is no reason for excluding them. The descriptive evidence is sufficient to enable this court to pass upon the competency and relevancy of the evidence.

When Henry S. Stair was arrested the officers, upon search, found in his possession a pocket book, in which was a paper writing given directions for curing ring-bone and on which were also written the following words: "Do you think it safe to try to kill them and wrap them up in the clothes and tell that they went off in buggy." This writing was read to and inspected by the jurors. The questions are, was it shown to be in the handwriting of Henry S. Stair, and was the paper properly admitted as evidence against both or either of the defendants? Dr. Rockwell was called and stated that he had seen Henry S. Stair write two or three notes to his wife and had seen him sign his name to another one; and that he thought he could tell Stair's writing. The paper was then handed to him and he said he should judge it was Stair's writing. He was not positive, but he should judge it was Stair's from a comparison with his memory of what Stair wrote. All evidence of handwriting, except when the witness saw the document written, is in its nature comparison. If the witness has the proper knowledge he may declare his belief. One of the modes of acquiring that knowledge is from having seen the person write. It is held suffi-

·cient for this purpose that the witness has seen the party write but once and then only his name. Greenlf. Evid., secs. 576, 577 ; *State v. Scott,* 45 Mo. 303. The proof was sufficient to let the paper go to the jury.

Unanswered letters of other persons, found in the possession of the accused, and not shown to have been acted upon by him, are not evidence against him. Whart. Crim. Evid., sec. 682, and cases cited. But where the defendant was indicted for larceny of a negro, the state read in evidence properly, it was held, a pencil memorandum found in the defendant's pocket-book when arrested, with the names of the owners of the slave written thereon. We do not say here, as was said there, that the memorandum could be read without proof of the handwriting. The writing here in question was, as we must take it, in the handwriting of Henry S. Stair and apparently addressed to some one not named. While it does not appear when it was made, still it was his own statement and the evidence in the case tends to show that he at least acted upon the suggestion. It was competent evidence as against him. But the more difficult question is, was it admissible as against Nannettie?

In *People v. Thomas,* 3 Parker C. R. 256, the defendant was indicted for having in his possession an altered bank-bill, and while under arrest his wife was searched and the state showed that she had in her possession engraved figures cut from genuine bills suited to that species of forgery and this evidence, it was held, was improperly admitted. There is evidence here tending to show that these defendants, who were husband and wife, certainly occupied that relation to each other, were at the camp of Sewell giving him assistance while sick, at least, professing so to do. Some of the evidence also tends to show that another person was present. It may be conceded that these and the other circumstances in evidence made out a *prima facie* case of conspiracy between these defendants to take the life of Sewell, so that

the acts and declarations of one, made in the prosecution of such common purpose, would be evidence against the other ; still there is not only a failure to show that she had any knowledge of this paper, but there is no proof as to when it was written. · It may have been made before she can be said to have had anything to do with the matter, and the suggestion may have been abandoned ; it may be surmised that the paper was written and handed to her that night, but surmises will not do.

It was said in *State v. Duncan*, 64 Mo. 266 : "De-clarations of confederates against each other are only admissible as part of the *res gestae*, and unless they ac-company acts done in the prosecution of the common object they are inadmissible." Again : "And here also care must be taken that the acts and declarations thus admitted be those only which were made and done during the pendency of the criminal enterprise and in furtherance of its objects." Greenlf. Evid., sec. 111. This writing is in the nature of a declaration of Henry S. Stair and we can but conclude that it was error to admit it as evidence against his co-defendant. The burden of laying the proper foundation for the admission of this evidence, as against her, was upon the state. The jurors were not instructed that they should not con-sider the evidence as against her, as was done in *State v. Talbott et al.*, 73 Mo. 347. I may add, the Attorney General does not, and properly, we think, regard it as his duty to insist upon the competency of this evidence as against Nannettie. We can not say this evidence was harmless. She makes evidence to the effect that she knew nothing about the murder until the sixth. The value of that evidence was for the jurors to determine. The admission of this paper would tend to destroy what-ever credence might otherwise be given to her state-ments.

The evidence, though circumstantial, is quite con-clusive as to the guilt of Henry S. Stair, and the objec-

tion made here that the verdict is against the evidence is not well taken. While the defendants were tried together, still they were separately arraigned and sentenced, and the verdict is a separate finding as to each defendant. We see no reason why the judgment as to one may not be affirmed and that as to the other reversed. *Vandermark et al. v. The People*, 47 Ill. 122; *Fletcher et al. v. The People*, 52 Ill. 395.

As to Henry S. Stair the cause was well tried and we find no error as to him. The judgment as to him is, therefore, affirmed, and as to Nannettie Stair the judgment is reversed and as to her alone the cause is remanded for new trial. The other judges concur.