(34 Misc. Rep. 101.)

PEOPLE v. KENNEDY.

(Supreme Court, Criminal Term, New York County.  February, 1901.)

CRIMINAL LAW—EVIDENCE—COMPARISON OF HANDWRITINGS.

Laws 1880, c. 36, as amended by Laws 1888, c. 555, providing for comparison of a disputed writing with another writing proved to the satisfaction of the court to be genuine, authorizes such comparison only where the disputed writing is the subject of controversy; and evidence of experts on handwriting, on a trial for murder, that a check found upon the body of the woman, and a pad in the room where she was murdered, were in the handwriting of the defendant, were inadmissible,—the issue being whether the woman had been murdered by the defendant, and the check and pad being merely evidence relating to that issue.

Samuel J. Kennedy was indicted for murder in the first degree, and the state offered to prove, by comparison of handwriting, that a check found on the body of the deceased and a pad were in the handwriting of the defendant, by means of the opinions of experts who had no knowledge as to the handwriting of the accused.  Objection to evidence sustained.

John F. McIntyre and Forbes J. Hennessy, Special Dist. Attys., for the People.

William W. Cantwell and Robert H. Moore, for defendant.

FURSMAN, J.  I do not think this evidence is competent.  I am satisfied it is not competent, and because the question is somewhat new, and arises in this case as it never has arisen in any other case,

I will state my views concerning it. I am aware, of course, of the fact that the matter may not be reviewed by the court of appeals in this case; but it may be reviewed some time by the court of appeals, and it is a question that ought to be decided by the court of last resort, because it becomes, in cases like the present, an exceedingly important question.

Now, the common law, so far as the evidence in relation to handwriting is concerned, obtained down to the enactment of chapter 36 of the Laws of 1880. There were two ways of proving handwriting at common law, and only two: First, by witnesses who had seen the party write, and thus were familiar with his writing; second, by witnesses who had become familiar with his handwriting by correspondence with him, or by seeing his handwriting in business transactions. There were but two exceptions to this rule of the common law, so far as I can learn after somewhat careful examination. The first was in relation to ancient documents, which, by reason of their antiquity, and because they had long been acquiesced in, were admitted in evidence without proof of the handwriting. The second exception was the rule permitting a comparison between writings of the party whose writing was under examination, which had been admitted as material and relevant to the issue, and the handwriting in dispute; that is, where other writings material to the issue had been admitted in evidence because they were material and relevant to the issue, they might be compared, under the common-law rule, with the handwriting in dispute. That was the rule of the common law, and, so far as my reading goes, continued down to the enactment of chapter 36 of the Laws of 1880. Now, that statute is this:

"An act to amend the law of evidence and practice on civil and criminal trials.
"Section 1. Comparison of a disputed writing, with any writing proved to the satisfaction of the court to be genuine, shall be permitted to be made by witnesses in all trials and proceedings, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute."

Now, that was a statement of the common-law rule enlarged by permitting comparison to be made by experts, by placing the writings in juxtaposition, of the writing in dispute with standards established to the satisfaction of the court. And since the enactment of that statute down to this time, in proper cases, that has been received without objection.

The first case under that statute that I have found is a case in 32 Hun, 472. The question did not directly arise. It only arose inferentially. It is the case of Hilsley v. Palmer. It was decided in my own department,—the Third department. The opinion is by Mr. Justice Boardman, then sitting at general term, in 1884. This was an action about a $10,000 note given by a person who was deceased at the time of the trial, and the defendant claimed that the signature to the note was a forgery. So that you see the signature of the note was directly in controversy. The genuineness of the signature was the issue between the parties. On that trial a witness who had testified in relation to the signature—the genuineness of the signature—was presented with a series of signatures, some of which had been man-

ufactured by another person, and asked to select those which were genuine and those which were not. Of course, he made mistakes. He could not select them. Then they offered to prove that these signatures which he had thus been interrogated concerning were written by another person, and offered them in evidence, and they were rejected. And on appeal the court held that inasmuch as they were examined concerning the purpose of testing the credibility and knowledge of the witness, and were not pertinent to the issue, they could not be received.

The next case is Bruyn v. Russell, 52 Hun, at page 17, 4 N. Y. Supp. 784. This case also arose in the Third department, and the opinion was written by Mr. Justice Landon, now of the court of appeals. The action was upon a promissory note for $5,000. There were various other questions in the case. The court say upon the subject now under consideration:

"We have examined the various assignments of error respecting the proof of the testator's handwriting and the genuineness of the signature to the note. There is a sort of false courtesy shown by the law to the pretenders to expert knowledge. Witnesses are criticised as failing to show themselves to be experts. They had, in some degree, the knowledge which an expert ought to have, and, in the present state of the law, we do not think the court erred in receiving their opinions. The defendants offered, by expert testimony, to show that the note in question and a letter admitted by the plaintiff to be in her handwriting were both in the same handwriting. Convincing as such evidence might be in certain cases, it does not seem to be admissible. Comparison of handwriting is only admissible between the disputed writing in question and the genuine handwriting of the person purporting to be the writer of the disputed writing."

The next case that I have found is in 95 N. Y., at page 73. It is the case of Peck v. Callaghan. In this case this statute of 1880 is discussed by Chief Justice Ruger, and all of the judges of the court of appeals concurred in his opinion. There was issue of forgery here. And, of course, where there is an issue of forgery, comparison under this statute is proper. Speaking of this act of 1880, Judge Ruger says this:

"This act was evidently intended to enlarge the rules of evidence, and extend the facilities for testing the handwriting of a party, the genuineness of whose signature was disputed, beyond the opportunities afforded by the then existing rules. It was theretofore competent to give the evidence of experts as to the genuineness of handwriting by comparison with other specimens of the party's handwriting, which had been admitted in evidence for other lawful purposes on the trial, but it had not been competent to introduce such specimens for the sole purpose of comparison. The evils apprehended from the introduction of such evidence have been stated to be—First, the selection of unfair specimens of the handwriting which is in dispute, by the party offering them in proof; and, second, the embarrassments arising from the multiplication of issues over the genuineness of the various signatures which might be offered in evidence. The act in question leaves the character, number, and sufficiency of identification of the specimens offered in evidence for the purposes of comparison entirely to the discretion of the court, and thus attempts to obviate the objections formerly existing to this species of evidence. The language of the act, however, which permits the introduction of specimens of a person's handwriting for the purpose of comparison, when proved to the satisfaction of the court, authorizes only the admission of such writings as purport to be the handwriting of the person the genuineness of whose signature is disputed. The disputed writing referred to in the statute relates only to the instrument which is the subject of controversy in the action, and the

specimens of handwriting admissible thereunder are those of the person purporting to have executed the instrument in controversy."

Now, this Dolly Reynolds check is not the issue in this action. It is not an issue at all. It is simply evidence upon which you seek, by the aid of other evidence in the case, to convict this man of the crime of murder. If this language of the court of appeals is correct, then, under the statute of 1880, a comparison cannot be had with mere evidential writing and standards set up and proved to the satisfaction of the court, but only between a writing that is the very subject of the action, the very thing in controversy, "the writing in dispute," as the language of the statute is, and standards set up and proved to the satisfaction of the court.

In People v. Everhardt, 104 N. Y., at page 591, 11 N. E. 62, the indictment was for forgery,—a criminal case. In that case, of course, the controversy was whether the paper in question was forged by the accused, and that paper was the writing in controversy,—"in dispute." The alleged forged signature was put in evidence, standards were established to the satisfaction of the court, and comparison admitted at the hands of the people between those standards and the alleged forged writing, because that was the question in dispute. The defense claimed not only that the writing was not forged by the defendant, the accused, but was actually forged by another person, whom he named; and they offered to prove the handwriting of the third person, who, the defendant asserted, committed the forgery, instead of the defendant himself, for the purpose of setting up or establishing standards, so that a comparison between that person's handwriting and the alleged forged paper, and the court of appeals said it was incompetent.

The next case on the subject is the case of People v. Murphy, 135 N. Y. 450, 32 N. E. 138, to which counsel referred me. In 1888 the legislature amended this chapter 36 of the Laws of 1880 by chapter 555 of the Laws of 1888:

"Chapter 555. An act to amend chapter 36 of the Laws of 1880, entitled 'An act to amend the laws of evidence and practice on civil and criminal trials.' "Section 1. Section 2 of chapter 36 of the Laws of 1880 * * * is hereby amended so as to read as follows: Comparison of a disputed writing with any writing proved to the satisfaction of the court to be the genuine handwriting of any person, claimed on the trial to have made or executed the disputed instrument or writing, shall be permitted and submitted to the court and jury in like manner. But nothing within contained shall affect or apply to any action or proceeding heretofore commenced or now pending."

This act was probably passed to avoid the decision in 104 N. Y., 11 N. E., inasmuch as it authorizes a comparison between the disputed writing and the genuine writing of any person claimed on the trial to have made the writing in dispute. In all other respects the law of 1880 is unchanged. It is still the writing which is the very subject of the litigation with which the comparison must be made.

In the case of People v. Murphy, 135 N. Y. 450, 32 N. E. 138, Judge Maynard wrote the opinion. On the trial two anonymous letters were introduced in evidence, containing threats, etc.; and the prosecution established standards under the law of 1880 by producing

and proving specimens of the genuine handwriting of the accused, and permitting comparisons. The court say:

"It is now objected that this mode of proof of defendant's handwriting was unauthorized; that it was not a case of a disputed writing, within the provisions of the act of 1880; that the statute was only intended to change the rules of evidence formerly in force when the authenticity of the paper is directly the subject-matter of the issue to be tried, as in the case of the denial of the execution of a note or a deed or a will, or any other instrument relied upon as the foundation of an action or defense. It is insisted that all of the reported cases are of this character, and the language of Chief Judge Ruger in Peck v. Callaghan is quoted, where it is said: 'The disputed writing referred to in the statute relates only to the instrument which is the subject of controversy in the action, and the specimens of handwriting admissible thereunder are those of the person purporting to have executed the instrument in controversy.' Whatever intrinsic merit there may be in this contention, we do not think it is available to the defendant upon this appeal. No objection appears in the record."

Therefore the court refused to decide it, because it was not objected to.

Now, what have we here? We have a check and a pad which are proved sufficiently to permit the evidence to go to the jury to be in the handwriting of the defendant. The check was the check found upon the person of this woman Reynolds by the coroner and others at the time she was undressed in room 84, shortly after the murder. The pad consisted of the pieces of paper that were found in the room, and which were pasted together, and which have been put in evidence here. What is the character of those writings? They are not the writing in dispute, because there is no writing in dispute here, within the meaning of this statute. That is, they are not the subject of this controversy. They are merely evidence relating to the controversy,—evidence which, with other evidence, you claim establishes the controverted thing in favor of the people, to wit, that this man Kennedy killed this woman Reynolds. Did he kill her? That is the controversy. That is the thing in dispute. You say he did. He says he did not. That is the controversy. That is the dispute. That is the only controversy and the only dispute here. The Dolly Reynolds check and the pad are evidence upon that subject. They are mere evidential writings. And if these courts who have expressed themselves upon that subject are correct in saying it must be the writing in dispute with which the comparison is made, the very subject of the controversy, the thing in issue, then comparisons cannot be had with these writings and other standards set up and proved to the satisfaction of the court to be the genuine handwriting of the accused. I am firm, myself, in that conviction. I do not think that the legislature has succeeded in enlarging the common-law rule to the extent that you claim for it here. I have noticed, through all these cases, and some cases that I have found in England, and one in Pennsylvania, that the courts seem disinclined to enlarge the common-law rule, except where made to do so by force of the words of a statute remedial of the common law. My judgment is that in this case comparison cannot be made by an expert in handwriting placing two pieces of evidence, not being the subject of the action, in juxtaposition, and comparing one with the

other, and declaring in his opinion whether one was written by the accused, or the other written by the accused, or both by one person, because, as I have stated, these are mere evidential writings, and not the writings which constitute the controversy in the action. I therefore sustain this objection.

Mr. McINTYRE. If the check is disputed,—if it is said that that check is not in the handwriting of this defendant,—can we then introduce the evidence?

THE COURT. I regret that I have not made myself clear. Of course, this writing is disputed, or probably will be. We can assume that the defendant will say, on his side, that it is not his handwriting, and therefore the genuineness of it is disputed; but it is not the writing in controversy, notwithstanding. There is no writing in controversy. It is evidential. It is merely evidence upon the question in controversy, and it is because it is not the subject of the action that it is inadmissible. In other words, the courts have held, in the cases which I have cited, or intimated exceedingly strongly and clearly, that the handwriting which can be compared by experts with standards proved to the satisfaction of the court to be the genuine writing of a party is the handwriting which is the subject of the action,—the very thing in controversy,—as where a will is said to have been forged, and is offered for probate, or where a person is indicted for forgery of a paper, or where a person brings an action against another upon a paper which the defendant claims is forged.

Objection sustained.