(85 South. 462)

**CHISOLM v. STATE. (6 Div. 949.)**

(Supreme Court of Alabama. Feb. 5, 1920.)

Criminal law ⬯364(1)—Envelope with writing on it, handed person robbed, admissible.

Envelope and writing, handed to prosecuting witness by negro at the moment he robbed her, *held* admissible in evidence in prosecution for the offense as res gestæ.

2. Criminal law ⬯339—Letter handed prosecuting witness by robber admissible on issue of identity.

Evidence that negro, who robbed prosecuting witness, handed her an envelope containing a letter declaiming against the people of the South, etc., and that on day of robbery defendant negro had come into witness' store and bought a tablet and pencil, *held* admissible for consideration on issue of defendant's identity as the person who committed the robbery.

3. Criminal law ⬯404(5)—"Disputed writing," within statute, defined.

A writing is a "disputed writing," within Gen. Acts 1915, p. 134, if in itself either a fact in issue or a fact relevant to the issue; it not being essential that the action or defense should be in fact founded on the writing in dispute.

4. Criminal law ⬯404(5)—Writing offered as standard for comparison must be admitted or found by judge to be genuine.

Under Gen. Acts 1915, p. 134, writing offered as standard for comparison with writing in dispute either must be admitted to be genuine or must be proved to reasonable satisfaction of trial court to be genuine, preliminary duty to determine whether writing offered as standard is genuine being imposed on judge, not jury.

5. Criminal law ⬯404(5)—Standard of disputed writing admissible in connection with testimony of comparison.

If a standard writing offered for comparison is admitted or proved to the satisfaction of the court to be genuine, Gen. Acts 1915, p. 134, permits the introduction of testimony of comparisons made by witnesses qualified as prescribed, and does not allow the introduction in evidence of the standard writing otherwise than in connection with the testimony of the qualified witnesses.

6. Criminal law ⬯741(1)—Function of jury relative to disputed writing stated.

Under Gen. Acts 1915, p. 134, if a standard of disputed writing is properly admitted in aid of evidence of comparison made by witnesses qualified as required, the jury's function is to decide from all evidence the genuineness vel non of the asserted standard writing, whether such writing is genuine, and also whether the disputed writing is genuine, subjecting the evidence of comparison by witnesses to the test of comparison by the jury in the light of the evidence.

Anderson, C. J., and McClellan and Thomas, JJ., dissenting in part.

Appeal from Circuit Court, Jefferson County; H. B. Heflin, Judge.

Horace Chisolm, alias, etc., was convicted of robbery, and he appeals. Reversed and remanded.

Grace & Simpson, of Birmingham, for appellant.

The court erred in admitting the Stevens letter. 203 Ala. 349, 83 South. 93; 188 Ala.

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

237, 66 South. 452; 163 Ala. 272, 50 South. 906; 149 Ala. 210, 43 South. 71; 149 Ala. 552, 43 South. 108; 114 Ala. 94, 21 South. 934; 112 Ala. 304, 20 South. 413; 52 Ala. 183; 74 Mo. 33; 9 Tex. App. 283. Counsel discuss other assignments of error, but without further citation of authority.

J. Q. Smith, Atty. Gen., for the State.
No brief reached the reporter.

McCLELLAN, J. The appellant was convicted of robbery from the person of Mrs. Lois Bruce. The commission of the crime was fully established. The controverted question was whether the defendant was the guilty agent. The robbery was committed in the daytime, on April 6, 1919, while Mrs. Bruce was waiting at a wayside station for an interurban car. The evidence is undisputed that a negro was the robber.

[1] At the moment of the robbery, effected by snatching a bag or purse swinging from Mrs. Bruce's arm, the offender handed her an envelope containing an unsigned writing, made in red ink. On the envelope was writing in red ink, but addressed to no person. This envelope and the writing in it were admissible in evidence as a part of the res gestæ of the crime. Mrs. Bruce later identified the defendant as the person who robbed her and who handed her the envelope mentioned. Mrs. Bruce also testified that this defendant said to her on the occasion of the robbery:

"Give this [meaning the envelope containing the writing] to your husband; we have been off, and we fought, and we have got nothing for it, and we are going to have our freedom; we are going to have one or the other, and we have things to get it with."

On the envelope was written this, "Envelope notice to yours part;" and the unsigned writing on the sheet inside was this:

"Notice to you lowdown southern white people We are gorning to have our freedom Dont for get that please the north is all right the south is Hell But We colored men Have Lirnt to Be Hell for you all all that ant right we glad you all sent us over se yours triuly
                    "Hell for your part."

The defendant denied that he was the person who committed the robbery, and presented evidence tending to establish an alibi. The identity of the defendant as the person who committed this crime the prosecution sought to show, by recourse, in part, to comparison of the handwriting on the abovementioned envelope and on the sheet within the envelope with handwriting on a paper, unsigned and unaddressed, "Notice to you only," which a witness (Mr. Stephens) testified the defendant left in his store on the night of April 7th, the next day after the robbery; this witness further testifying that he knew the defendant, that he came into witness'

store four or five times that day, prior to the time the defendant left the writing there, and bought from witness a pencil and tablet several hours, on that afternoon, before the writing was left at the store by the defendant as stated. The defendant denied having written the paper to which the witness Stephens had reference in his testimony.

[2] The majority of the court, consisting of Justices SAYRE, SOMERVILLE, GARDNER, and BROWN, entertain the view, and so hold, that the circumstances indicated afforded some evidence that this defendant wrote the matter on the envelope and on the sheet within the envelope that Mrs. Bruce testified was handed to her by this defendant, and hence was a proper element of evidence to be considered by the jury on the issue of identity of the defendant as the person who committed the robbery of Mrs. Bruce on the occasion stated, and as supporting this conclusion they desire cited the decision in State v. Dilley, 44 Wash. 207, 87 Pac. 133, 136. The writer and ANDERSON, C. J., and THOMAS, J., entertain the opinion that neither the evidence above recited nor the fact of the similarity of the sentiment expressed in the quoted writing to the sentiment quoted from the testimony of Mrs. Bruce tends, in any degree, to show that this defendant (assuming that he handed this envelope and the writing therein contained to Mrs. Bruce) himself wrote the matter on the envelope and on the sheet contained in it; their view being that, in the absence of evidence tending to show that a writing was in the handwriting of the person sought to be charged therewith or affected thereby, the possession or delivery of an unsigned writing is no evidence whatsoever that the person having the possession or delivering the paper himself put the writing on it. Proof of handwriting and the consequences to follow from its establishment pertain to a distinct, vitally important department of the law of evidence. An undiscriminating, illogical administration of it must introduce confusion and consequent error. The question is one of law purely; one the decision of which will deserve respect in all subsequent cases falling within its influence. The envelope, the sheet therein, and the writing thereon being admissible as of the res gestæ of the crime, their evidential serviceableness or effectiveness to identify this defendant as the guilty agent must necessarily depend either upon something on these two papers, or upon the fact, if so, that the writing on the envelope and the sheet were in the handwriting of this defendant, who denied putting the writing on them.

It is evident from a reading of the matter on these two papers that, while a general race hatred against Southern white people is therein expressed, and a purpose to gain "our freedom" is therein announced, as well as the pronouncement of the writer's view of a comparison unfavorable to the South and

favorable to the North, yet there is nothing whatsoever on these two papers that indicated a purpose or design to rob anybody, much less to commit the capital crime with which this defendant is charged. So the only ground upon which this envelope and sheet and the matter thereon written could be received as any evidence to identify this defendant as the guilty agent must result, if at all, in the establishment, in some degree, at least, that this writing was in the handwriting of this defendant, who does not admit that he did the writing. In Ex parte Edmunds, 83 South. 93,[1] granting an application for certiorari to the Court of Appeals and reversing its judgment, it was expressly decided that a writing, shown by some of the evidence to have been found in the defendant's room "along with the prohibited liquors" (beer, for the possession of which the defendant, Ben Edmunds, was being prosecuted), addressed to "Frank" and signed "B," was not even admissible in evidence, unless authenticated, shown to have been written by Ben Edmunds, the defendant—citing authorities conclusive of the question as the majority decided it. The obvious doctrine of the very recent decision in Ex parte Edmunds, following the statement of the rule by Wharton (10th Ed.) vol. 2, p. 1102, § 572d, as well as the deliberate and oft-repeated deliverances of this court, is that even a relevant writing is not admissible against a defendant, unless proof of its authenticity is made, which, it is plainly held, can be alone afforded by proof that the defendant wrote it. It thus appears that the view now prevailing on the question stated is in immediate contradiction of what was decided in Ex parte Edmunds, supra. A reading of that opinion will further emphasize the divergence now made from its unmistakable ruling.

The case of State v. Dilley, 44 Wash. 207, 87 Pac. 133, 136, cited ante at the request of the majority of the court, is not only opposed to the doctrine of Ex parte Edmunds and authorities therein noted, but also the circumstances there considered by the Supreme Court of Washington invoked the application of principles radically different from those here involved. There the writing bore on its face, as the court's statement shows, reference to the theretofore committed crime for which the defendants were incarcerated at the time the note fell from the window of the room in which Mrs. Dilley alone was confined. The court held, under the circumstances stated, among which, to repeat, were statements in the writing itself referable to the crime charged, that proof that the note was in the handwriting of Mrs. Dilley was not requisite to permit the note's introduction in evidence. The application of the doctrine of Ex parte Edmunds would have led to the opposite result, had the question been presented here in

the same way. Like rulings, to that made in this connection in State v. Dilley, supra, were made in Lovelace v. State, 12 Lea (Tenn.) 721, 724, and in State v. Stair, 87 Mo. 268, 56 Am. Rep. 449; but it distinctly appears in these cases, as in the Dilley Case, that the writings offered and received in evidence bore on their faces allusions to the crime then under investigation, vitally important circumstances not present in the writing here in question. The case of State v. McDaniel, 39 Or. 161, 65 Pac. 520, arose over the effort, justified by the court, to introduce a letter found on the defendant's person at the time of his arrest, a letter that other evidence went to show was the same letter the deceased had in her hand and handed to a young man companion on the night the deceased was killed. The court held the letter admissible, in connection with the other evidence indicated, upon the same principle that wearing apparel, etc., belonging to or used by a defendant criminally charged are received in evidence. To like effect is State v. Atkinson, 40 S. C. 363, 18 S. E. 1021, 42 Am. St. Rep. 877. The true doctrine to which the rulings in these cases must be alone referred has no bearing upon the matter now under consideration, viz. the effort to identify the accused by handwriting without presenting any evidence tending even to show that he did the writing. The added importance of the ruling made on this point appears when the application and effect of our statute of 1915, quoted below, is involved in the inquiry; for that statute is designed to afford the means to establish the verity of a "disputed writing," and certainly a writing is not a "disputed writing" within its purview, the authenticity of which no evidence has been presented tending, at least, to show; the writing bearing on its face no matter referring it to the crime charged or to the accused as the guilty agent.

The act approved March 6, 1915 (Gen. Acts 1915, p. 134) reads:

"Section 1. That comparison of a disputed writing with any writing admitted to be genuine or proven to the reasonable satisfaction of the court to be genuine shall in civil and criminal cases be permitted to be made by witnesses who are qualified as experts or being familiar with the handwriting of the person whose handwriting is in question and such writings and the evidence of witnesses respecting the same may be submitted to the court or jury trying the case as evidence of the genuineness or otherwise of the writings in dispute."

[3] The comparison authorized by the quoted act comprehends, on the one hand, the "disputed writing." A writing is a "disputed writing," within the purview of the act, if it is "itself either a fact in issue or a fact relevant to the issue"; it not being essential that the action or defense should be in fact founded on the writing in dispute. People v. Molineux, 168 N. Y. 264, particularly pages 318–325, 61 N. E. 286, 62 L. R. A. 193, a not-

[1] 203 Ala. 349.

able pronouncement evoked by a statutory status similar in many respects to our quoted act. A lower New York court took a different view (see People v. Kennedy, 34 Misc. Rep. 101, 69 N. Y. Supp. 470), but the Court of Appeals noted on page 325 of 168 N. Y., on page 306 of 61 N. E. (62 L. R. A. 193), the fact that on its review of People v. Kennedy, supra, no account was taken of the view to which the trial court gave effect in its opinion reported in 34 Misc. Rep. 101, 69 N. Y. Supp. 470.

[4] Under our statute, the writing offered as a standard for comparison with the "writing in dispute" must, in the first place, and before it can be accepted in evidence, be either "admitted to be genuine," or it must be "proven to the reasonable satisfaction of the court [the judge, we supply] to be genuine." This provision imposes a preliminary duty upon the judge (not the jury) to determine, in the first instance, from appropriate evidence or admission submitted to the judge (not jury), whether the writing offered as a standard or example is a writing "admitted to be genuine," or, if not admitted to be genuine, whether the evidence so presented is sufficient reasonably to satisfy the judge that the writing, offered as a standard, is genuine. People v. Molineux, supra; 6 Ency. of Evi. p. 434.

[5] If either of the conditions with respect to the standard writing sought to be set up, viz. the admission of genuineness, or genuineness established to the reasonable satisfaction of the judge, is present, our statute then permits the introduction of testimony, along with the standard writing so rendered admissible, of comparison made by witnesses qualified as the statute prescribes, and does not allow the introduction in evidence of the standard writing, otherwise than in connection with the testimony of witnesses so qualified; the statute not at all contemplating the constitution of such standard writing, alone, original evidence in the premises. People v. Pinckney, 67 Hun, 428, 22 N. Y. Supp. 118; Glenn v. Roosevelt (C. C.) 62 Fed. 550; 6 Ency. of Evi. p. 393. Our statute is not so identical in its terms with the English act (17 & 18 Vict. c. 125; 19 & 20 Vict. c. 102, § 30; 28 & 29 Vict. c. 18, § 8) as to require the acceptance of that act as *the* progenitor of our act of 1915, quoted ante. For statement of the administration of the English act, see State v. Thompson, 80 Me. 194, 13 Atl. 892, 6 Am. St. Rep. 172, where it was said:

"By the English rule, under this statute, the jury need not consider or inquire into the genuineness of the writing introduced for the purpose of comparison, as the statute obviates the necessity of any such inquiry, *and makes the finding of the judge conclusive on that point.*" (Italics supplied.)

Where the person supposed to have written the document in dispute admits, in the presence of the court on the trial, that the writing presented as a standard for comparison is genuine, there is no occasion for further evidence to justify the court in accepting the proffered standard as genuine, and, in consequence, permitting the comparison the statute contemplates to be made by properly qualified witnesses. But where either the fact of admission elsewhere is in dispute or the genuineness of the proffered standard is sought to be shown to the court by admissible evidence otherwise, the character of evidence and its probative force necessary, under this statute, reasonably to satisfy the judicial mind of the genuineness of the proffered standard writing, as a condition precedent to the admission of testimony of comparison made by properly qualified witnesses, is that the fact of genuineness shall be shown "by clear and undoubted testimony," or, stated another way, by "positive and direct" testimony. Costello v. Crowell, 133 Mass. 352, 354; Rowell v. Fuller, 59 Vt. 688, 10 Atl. 853, 860, 861; Bragg v. Calwell, 19 Ohio St. 407, 413. In the very nature of the proceeding authorized by this statute, the genuineness of the proffered exemplar or standard, by which the disputed writing's authenticity is to be tested, in a way, by the testimony of witnesses making the comparison, should be established in no uncertain degree, by no uncertain means.

[6] Given the proper admission of the standard writing, in aid of the evidence of comparison with the disputed writing, made by witnesses qualified as the statute prescribes, the function of the jury is to decide, from all the evidence bearing on the inquiry, the genuineness vel non of the asserted standard writing, whether such writing is genuine, and also whether the writing in dispute is genuine; and under these circumstances the jury may, of course, subject the evidence of comparison made by the witnesses to the test of a comparison made by the jury in the light of the whole evidence. State v. Hastings, 53 N. H. 452; 6 Ency. Evi. p. 434. Of course, if the jury find that the writing presented as a standard is not genuine, the jury must lay out of view, and not consider, the writing so found not to be genuine, as well as all evidence based upon such writing. State v. Hastings, supra.

In respect of the "Stephens writing," no evidence was offered by the prosecution of a comparison made by the witnesses, as the statute requires. It was therefore error to admit that writing in evidence, and the error must have been highly prejudicial. The principles stated will, on the next trial, be given appropriate effect with respect to other writings offered by the state.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

All the Justices concur in the reversal for the error indicated.