### PEOPLE *v.* COLE.

*(Supreme Court, General Term, Fifth Department.* October 21, 1892.)

1. FALSE PRETENSES—PROCURING INDORSEMENT ON NOTE.

On a prosecution under Pen. Code, § 566, for obtaining the signature of a person as indorser on a note by false pretenses, with intent to cheat and defraud him, the fact that the person so defrauded was credulous and unwary is immaterial.

2. SAME—QUESTION FOR JURY.

In such a prosecution it is for the jury to say whether the representations made by defendant to the person whose signature was procured were made for the purpose of inducing him to indorse the note, and with intent to cheat and defraud him, and whether they were false, and were calculated to deceive him.

3. SAME—EVIDENCE.

On a prosecution under Pen. Code, § 566, for obtaining the signature of a person as indorser on a note by false pretenses, with intent to cheat and defraud him, evidence that defendant procured such person to indorse other notes from time to time to a large amount, which finally resulted in his financial ruin, is competent as bearing on defendant's motive.

4. SAME.

In such case evidence of an assignment for the benefit of creditors, made by the person so defrauded, is competent as part of the history of the case.

Appeal from court of sessions, Monroe county.

Indictment of Anthony Cole for obtaining a signature by false pretenses. From a judgment of conviction, and from an order denying a motion to set aside the verdict, and for a new trial, defendant appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Raines Bros.*, for appellant. *George A. Benton*, Dist. Atty., for the People.

LEWIS, J. The defendant was convicted at the Monroe county sessions of the crime of obtaining the signature of one George E. Harmon as an indorser upon a promissory note, by false pretenses, with the intent to cheat and defraud the complainant Harmon, under section 566, Pen. Code. The indictment fully and sufficiently states the acts the defendant is alleged to have done, which constitute the crime he was charged to have committed. It will not be necessary nor profitable to rehearse the testimony adduced upon the trial tending to prove the allegations of the indictment. There was sufficient evidence to establish them. The devices resorted to by the defendant to in

duce the complainant to indorse the note, as charged in the indictment, and also to indorse a large number of other promissory notes from time to time, were of such a character as to excite our surprise that Mr. Harmon was deceived by them. We should suppose that a person, having had the experience in the affairs of the world Mr. Harmon was shown to have had, would have at once discovered the fraudulent intentions of the defendant, and would have seen that the transaction was a fraud and a sham. It is, however, a matter of history that frauds are frequently and successfully practiced upon ordinarily intelligent people, by devices and schemes which to the most of us seem so transparently fraudulent as to excite our surprise that any one could be deceived thereby. It does not lessen the criminality of the rogue that his victim was credulous and unwary. The law is intended to protect all classes from the wiles of criminals. It was properly left to the jury to decide whether the representations which the defendant was shown to have made to Mr. Harmon were made for the purpose of inducing him to indorse the note, and with the intent to cheat and defraud him, and whether they were false and were calculated to deceive him. The procuring of Mr. Harmon to indorse other notes from time to time to a large amount, and which finally resulted in his financial ruin, was competent evidence bearing upon the motives of the defendant in procuring the indorsement alleged in the indictment. The evidence of the assignment made by Harmon for the benefit of his creditors was competent as a part of the history of the case, though not of any great significance. The rule of law as to what was necessary for the people to prove, to convict, was fully and correctly stated to the jury in the charge of the court. We find nothing in the record calling for a reversal of the conviction. The judgment and order appealed from should be affirmed, and the proceedings remitted to the court of sessions of Monroe county, with directions to proceed thereon.

All concur.