THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, *v.* EUGENE A. PINCKNEY, APPELLANT.

*False representations — obtaining money on a worthless check — comparison of handwritings.*

It is not necessary in order to establish false representations that the proof should be direct, but such evidence must be given and such facts established as tend legitimately and necessarily to show the existence of a fraudulent intent.

On appeal from a conviction under an indictment for grand larceny in the second degree, in obtaining money on a worthless check through false representations, it appeared that testimony was given on the trial showing that when the defendant was charged with drawing a check, purporting to be signed by a mythical person, he made no denial.

*Held,* that the jury had a right to find that such was the actual fact.

Under chapter 36 of the Laws of 1880, as amended by chapter 555 of the Laws of 1888, in reference to comparison of handwritings, the submission of writings to a jury must be in connection with the testimony of witnesses in regard to the validity or authorship of the various handwritings; and in the absence of such testimony such writings cannot be submitted to the jury for the purpose of arbitrary comparison by the jurors.

APPEAL by the defendant, Eugene A. Pinckney, from a judgment of the Court of General Sessions of the City and County of New York, rendered on the 26th day of August, 1892, convicting the defendant of the crime of grand larceny in the second degree.

*D. McMahon,* for the appellant.

*H. B. B. Stapler,* for the respondent.

VAN BRUNT, P. J.:

The defendant was indicted, charged with the crime of grand larceny in the second degree. It appears that on the 14th of May, 1892, the defendant called at the store of one Denholme, who, with his partner, carried on the business of dealing in shirts and mens' furnishing goods, and purchased some goods of the value of twelve dollars and forty-five cents, and requested that a check which he then presented for ninety-six dollars and seventy-five cents be cashed, the amount of the purchase which he then made to be taken out, also the sum of four dollars and fifty cents, the amount of a purchase made by him a few days previously. The witness Denholme asked the defendant if the check was good, if it was a good business check,

and he said " Yes, that is good ; I have sold that man lots and lots of goods ; he would ship him a car load of goods at once if he requests it."

The check was received and the balance in money paid to the defendant. The check was dated at Belle Plain, Iowa, 10th of May, 1892, drawn on the First National Bank to the order of the defendant for the sum of ninety-six dollars and seventy-five cents, and signed " Edward Thomas," and duly indorsed by defendant. Mr. Denholme deposited this check in the Chatham Bank, and in about a week it was returned protested for non-payment. He then had an interview with the defendant and said to him that " the bank writes that this party is a myth ; that you have been drawing fraud-ulently upon the bank." Denholme further said : " I showed him a letter from the bank president, the first letter I got, and told him that the party was a myth, and the check was a fraudulent check." The only reply that the defendant made to this statement, according to Denholme's testimony was that he would make it good. The partner also saw the defendant in reference to this matter, to whom the defendant said : " That is all a mistake ; that man's perfectly good ; " that he knew him personally and did business with him for a long time. The partner then told the defendant that he was a myth and had no account ; that there was no such man in existence to their knowledge ; and the reply of the defendant was : " These bankers make mistakes sometimes." In a subsequent conversation the witness told defendant that he had found out he had played the same game on a number of other people, and that he thought the whole transaction was crooked. The defendant's reply was, that " he had a good many names of people ; he would talk about people who knew him, how well they conducted themselves ; it was all a mistake."

Evidence was also offered showing that on the 20th of March, 1892, the defendant passed upon the witness Carner another check for $100 drawn by himself upon the same bank which was protested for non-payment and not paid ; and, also, before the return of this Iowa check last mentioned, the defendant had deposited with the witness another check for $100 drawn on the First National Bank of Asbury Park, which check was returned unpaid, the check con-taining the letters " N. A." which the witness said meant no account.

The check upon which the defendant obtained the money from the complainant, signed "E. Thomas," and the check drawn upon the same bank, upon which the defendant obtained the money from the witness Carner, signed "E. A. Pinckney," the district attorney claimed the right to show to the jury and ask them to compare them. This was objected to upon the part of the defendant, and the court ruled that the district attorney might show them to the jury in order to show the fraudulent intent of the accused, and the district attorney thereupon exhibited the check to the jury and asked them to compare the signatures of the two checks. The case having been submitted to the jury the defendant was convicted, and from the judgment thereupon entered this appeal is taken.

It is urged upon the part of the defendant that there was no legal proof that any of the representations made by the defendant at the time of procuring the cashing of this check were false.

There is no doubt that there is no direct proof of the falsity of these representations. It is not necessary in order to establish false representations that the proof should be direct; but such evidence must be given and such facts established as tend legitimately and necessarily to show the existence of such intent.

It appears from the evidence in this case by competent testimony that this check was sent for the purpose of collection and returned protested for non-payment, and that one of the witnesses had an interview with the defendant in which he stated that the bank had written that the party signing the check was a myth, and that defendant had been drawing fraudulently upon the bank; and the only reply that the defendant made to this statement was that he would make it good. The jury had a right, upon testimony showing that when the defendant was charged with drawing a check purporting to be signed by a mythical person he made no denial, to find that such was the actual fact. And, therefore, the evidence upon this branch of the case tended to show that the representations made by the defendant were absolutely false.

But, we think, fatal error was committed in submitting the check purporting to be drawn by Thomas, and the one purporting to be drawn by Pinckney, to the jury for the purpose of comparison of handwriting. It is apparent, upon an inspection of the statute, chapter 36 of the Laws of 1880, as amended by chapter 555 of the

Laws of 1888, that the jury, independent of testimony in regard to handwriting, are not permitted to become witnesses simply upon an inspection and comparison of handwriting. Section 1 of the act of 1880, provides that comparison of a disputed writing with any writing proved to the satisfaction of the court to be genuine, shall be permitted to be made *by witnesses* in all trials and proceedings, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute. By the Laws of 1888 this rule was enlarged by the addition of a section providing that comparison of a disputed writing with any writing proved to the satisfaction of the court to be the genuine handwriting of any person claimed on the trial to have made or executed the disputed instrument or writing, shall be permitted and submitted to the court and jury in like manner; the words " in like manner " referring to the manner provided in the first section. Therefore, it is apparent that the submission of a writing to a jury must be in connection with the testimony of witnesses in regard to the validity or authorship of the various handwritings ; and that, independent of the examination of witnesses, such handwritings cannot be submitted to the jury for the purpose of arbitrary comparison by them. In other words, the handwriting can only be inspected by the jury in aid of the testimony of witnesses in reference to the authorship of the handwritings in question.

In the case at bar, without any testimony tending to show that these checks were signed by the same individual, they were submitted to the jury. The jurors thus became original witnesses, to determine the question according to their own sweet will or fancy.

We do not think that any such practice was intended under the laws in question; and that the submission of these signatures by the district attorney to the jury for arbitrary comparison, was error.

It is not necessary to consider other points in the case in which error was committed; but it is apparent that the defendant may have suffered injustice by the submission of the checks in question to the jury.

The conviction must be reversed and a new trial ordered.

O'BRIEN and FOLLETT, JJ., concurred.

Conviction reversed and new trial ordered.