Mary E. Hoefler, Plaintiff, v. Mary R. Hoefler, Defendant.

*Alimony — inducing a husband ordered to pay it to leave the State — right of action in the wife therefor.*

Where a mother, who knows that her son has been ordered by the court to pay a weekly allowance to his wife, and whose son is in contempt for a failure to make such payment, induces him to leave the State of New York and remain beyond its jurisdiction in order to escape such payment, and furnishes him with money to do so, such act of the mother tends to defeat, impede and prejudice the right and remedy of the wife under the order directing the payment of the allowance, and the wife may maintain an action against the mother for the damages which have resulted from her act.

What evidence is sufficient to present a question for the jury as to whether the mother, with a view to preventing the collection of such allowance, furnished the husband with money to leave the State of New York and as to whether the mother had notice of the order directing such payment, considered.

Motion by the plaintiff, Mary E. Hoefler, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance upon a nonsuit granted by the court after a trial at a Trial Term of the Supreme Court held in and for the county of Monroe on the 30th day of March, 1896.

The action was commenced November 7, 1893. The cause was first tried at the Monroe Circuit in January, 1895. A verdict was then rendered for the plaintiff and judgment was entered thereon, which was reversed by the Appellate Division, fourth department, in February, 1896. The plaintiff is the wife of the defendant's son, John C. Hoefler, whom she married in June, 1888, and by whom she had two children. They lived for a while in Geneva, N. Y., and in February, 1892, the plaintiff left her husband, returned to her parents in Rochester and commenced an action against her husband for separation and support. On April 25, 1892, the Monroe Special Term made an order upon the hearing of the parties requiring John C. Hoefler to pay the sum of twenty-five dollars counsel fees and the sum of four dollars per week to his wife for alimony during the pendency of the action, which allowance was to commence April 25, 1892. The plaintiff's husband was a letter carrier in Geneva, receiving a salary of $600 per year. He paid the weekly allowance as required by the order up to September 1, 1892. This action is still pending.

John C. Hoefler departed from the State on the 25th of December, 1892, and went to Lincoln in the State of Nebraska, where he has since remained in business, and has not contributed anything toward the support of his wife or family or paid the weekly allowance  The complaint in this action seems to have been intended in a double aspect, to recover damages against the defendant for alienating the affections of the plaintiff's husband and depriving her and her children of his support; and, also, to recover for the unpaid alimony, but it was held upon the first appeal in this action by this court (2 App. Div. 8) that if any cause of action existed upon the allegations in the complaint, it was to recover damages against the defendant for advising and procuring the husband to leave the State and remain out of it for the purpose of avoiding the payment of the alimony or support, and that she furnished him money for that purpose, and inasmuch as evidence was received upon the first trial not competent upon the last-named issue a new trial was ordered. The. complaint, after alleging the existence of the first action and the order for the payment of alimony and the payment by John C. Hoefler of the counsel fees and the weekly allowance up to September first, continues: "When he ceased to pay the same and without making any provision for the support of plaintiff and her said children, or for the payment of said sum of $4.00 each week as provided in said order, and said defendant in this action well knowing of said order of said court, and wrongfully contriving and intending to injure the plaintiff and to deprive her of the comfort, society and aid of her said husband, John C. Hoefler, maliciously advised and counselled and induced the said John C. Hoefler to secretly leave the State of New York and find a separate residence elsewhere, and furnished the said John C. Hoefler with money and means to leave this State and thereby to disregard said order and avoid it, and avoid paying the moneys thereby ordered to be paid, and thereby deprive plaintiff of the same, and of all efforts to compel the said John C. Hoefler to support plaintiff and their said child Josephine, and that said John C. Hoefler acted on said advice of the said defendant, and upon the money and means furnished by said defendant, and without the knowledge or consent of this plaintiff, the said John C. Hoefler, in pursuance thereof, left this State on or about the 25th day of December, 1893, and went

to Lincoln in the State of Nebraska, and ever since has remained in Nebraska, claiming his residence there, away from plaintiff, * * * and ever since that time the said John C. Hoefler has been and is now without this State and under the defendant's custody, control and influence * * * with intent to remain without this State."

The defendant answered, admitting the order for alimony and the default after September, 1892, besides other admissions, with denials.

The plaintiff testified to a conversation with the defendant in September, 1893, in the presence of her sister, Kittie Adwen. The defendant had been out to see her son John, and after some conversation on that subject and about a present, the plaintiff's testimony continued: "I said I had one from my husband. She (defendant) said: 'Did you get a present from John?" I said yes, one that I could carry for life. She asked what it was. I said it was that scandal and disgrace he got into in Geneva. She got up and said he didn't have to leave Geneva for any scrape with that woman there. She said she gave him money to go away, and I said I was glad to know how my money had been stopped. [Objected to. The last clause of the statement was stricken out.] (The witness continues.) I said I was glad I had now found out who had stopped my money. She said, 'What do you mean by that?' I said, 'If you gave my husband money to leave the State and go away, you were the one who took the bread and butter from my little children's mouths.' * * *. Q. What else was said? A. She said that she was very proud of him there and she was very glad that he went there, and that was the reason why she went there to see him, and that he was getting along grandly."

Kittie Adwen, the plaintiff's sister, testified that she heard this conversation, or a part of it, and adds: "They got to talking, and Mrs. Hoefler (defendant) said, 'You have a very nice cape on.' My sister-in-law said: 'Yes, my mother gave me that as a present, and her and I paid for it.' She said: 'I got a present from Johnny, * * * one that I will never forget * * * that scrape he got into with the Landers woman in Geneva.' * * * Mrs. Hoefler said: 'No, he didn't have to leave Geneva. I was advised by my lawyers to send Johnny away.'"

William E. Leach, another witness for the plaintiff, testified that he knew the husband when he left Geneva; that he went with the husband to defendant's store when he heard a conversation between the husband and defendant, as follows: "Q. State just what you saw and heard. A. He walked up to his mother and said, 'Mother, I want to get some money.' She said, 'What for?' He said, 'I am going away.' She said, 'Where are you going?' He said, 'To Lincoln, Nebraska; I can get a good job there.' He said, 'I would like a hundred dollars.' She said, 'I can't let you have that.' He said, 'How much can you let me have?' She said, 'I might spare you fifty dollars.' She gave him some money and he put it in his pocket and she said, 'I hope you will be so far away now that you won't have to pay any more alimony to that Irish thing.' Then we went out and went into the International Hotel; I saw her count the money, but I was some feet from them; I saw the money in his possession after that."

This was the substance of the testimony upon the subject of the defendant inducing the husband to leave the State.

*William E. Edmonds,* for the plaintiff.

*Thomas Raines,* for the defendant.

Ward J.:

Two questions arise upon this review : *First.* Was there sufficient evidence to go to the jury upon the question as to whether the defendant had notice of the order for alimony, and induced John C. Hoefler, plaintiff's husband, to leave the State and remain beyond its jurisdiction to avoid the payment for support provided by the order.

*Second.* Conceding that the first proposition is answered in favor of the plaintiff, then was a cause of action created in favor of the plaintiff against the defendant to recover the damages sustained by the plaintiff in consequence of the defendant's acts?

In disposing of this case we must give the plaintiff the benefit of all the testimony given upon the trial, treating it as true, and of all inferences in her favor which may legitimately flow from such testimony.

We think the statement of the testimony above given solves the

first question in favor of the plaintiff. There was sufficient evidence to go to the jury as to whether the defendant, with a view of defeating the plaintiff's claim for the weekly allowance, had induced the plaintiff's husband to leave the State to prevent any proceedings against him for the enforcement of the order directing the allowance,.and that she furnished him with means to accomplish that end.

The plaintiff's counsel claims that the answer admits the allegation in the complaint, that the defendant did these acts knowing of the existence of the order and of its terms. The distinct allegation of her knowledge in this regard, in the complaint, is certainly not expressly denied, and the defendant does admit in her answer that at some time she had knowledge of the existence of that order. It is true the answer has the general statement that it denies every allegation in the complaint not before expressly admitted (a form of pleading not to be commended), yet the defendant not having denied, specifically, this allegation, and the answer containing no general denial of the complaint, the defendant was called upon, when she admitted that at some time she had knowledge of the order, to deny specifically that she had such knowledge at the time of the husband's departure from the State, if she intended to put the allegation in the complaint in issue. But, be that as it may, the evidence we have quoted may indicate a knowledge of the order; it was for the jury to say. The use of the word "alimony" by the defendant is significant in this connection. There was evidence that the defendant was aware of the action for a separation.

The defendant's counsel strenuously contends that the plaintiff has no remedy by action against the defendant; that it does not appear that the alleged tort of the defendant caused any damage whatever to the plaintiff, and if any damage did arise it was too remote, indefinite and contingent to be recovered, and he cites *Lamb v. Stone* (11 Pick. 527), where a Massachusetts court holds, in effect, that, where a defendant had fraudulently purchased the property of a debtor, and had induced him to leave the State of his residence, a creditor of that debtor who had intended to attach the property of the debtor to secure his debt, and who had intended to arrest the debtor, but had never carried his intention into execution, or procured any attachment against the debtor until the property was sold and he had left the State, had no cause of action, for the

excellent reason, as the court says, that the creditor had obtained no lien upon the property by attachment. The claim of the plaintiff consisted, simply, in an intention to effect the lien which was never consummated.

In the case at bar the husband was in contempt for violating an absolute order of the court in the plaintiff's favor requiring the husband to pay her money. There was no contingency about it. Under the statutes of this State the plaintiff was entitled to proceedings against the husband to compel its payment and to punish him for contempt. Of this right the plaintiff was deprived by the intermeddling of the defendant in placing the husband beyond the jurisdiction of the court. The damage in this case (the loss of the alimony) was not remote or contingent. The grasp of the law was upon this husband and upon his property and earnings for the benefit of the wife, which the husband could not escape unless he was placed beyond the jurisdiction of the court so that its order could not be enforced against him, so that the direct consequence of the defendant's acts was that she lost her support and the remedy to compel its payment. The damages were, therefore, the natural and legitimate result of the defendant's acts.

In *Porous Plaster Co.* v. *Seabury* (43 Hun, 611) it appears that the plaintiff in the action had brought a prior action against the same defendants to establish a trade mark, in which it was successful and had obtained a permanent injunction enjoining the defendants from violating the trade mark. The action in that case was brought, among other things, against the defendants to recover damages for a violation of this injunction which had accrued since the judgment in the first action. It was insisted there, as it is here, that the proper remedy of the aggrieved party was to institute proceedings to punish the defendant for a contempt where the damages sustained could have been included in a fine, but Judge VAN BRUNT in a clear opinion, representing the General Term of the first department, held that notwithstanding the violation of the injunction order subjected the defendants to contempt proceedings, and they might be proceeded against and fined and the damages collected in that way, there was nothing in the Code which restricts the plaintiff to this form of procedure, but it had a right of action for the damages.

In *Kings* v. *Barnes* (113 N. Y. 476), where a final judgment required the president and directors of a corporation to transfer its stock upon the books of a corporation, and one Barnes, who was a defendant in the action, though not called upon personally to perform the act required, but who advised and aided the defendants, whose duty it was to transfer the stock, to disobey the judgment, and it appeared that Barnes was " supporting them out of the jurisdiction when the fire of the courts became too hot for safety, or their orders could be thwarted by that means," and Barnes was fined and imprisoned for contempt, Judge FINCH (at p. 479), in referring to section 14 of the Code of Civil Procedure, the last clause of subdivision 4, says : " The subdivision specifies certain acts of interference with the due and orderly progress of an action or proceeding to its final and ultimate close, and then adds generally a provision which covers any other interfence with it. So that any person who interferes with the process or control or action of the court in a pending litigation, unlawfully and without authority, is guilty of a civil contempt, if his act defeats, impairs, impedes or prejudices the right or remedy of a party to such action or proceeding."

Here is a clear intimation that damages may arise from such an interference which the injured party is entitled to recover in contempt proceedings, and the case cited in Hun holds, as we have seen, that such damages may be recovered by action.

The act of this defendant, complained of, certainly tended to defeat, impede or prejudice the right or remedy of the plaintiff in the action for a separation.

The defendant finally claims that no precedent can be found for this action.

This action would, under the old system, when actions had names, have been an action upon the case, which is said to be a remedy adapted to every special invasion of one's rights. (*Millar* v. *Taylor*, 4 Burr, 2345.)

And in all cases where a man has a temporal loss or damage by the wrong of another he may have an action on the case to be repaid in damages. (Com. Dig. "Action on Case ;" *County Commissioners* v. *Duckett*, 20 Md. 468.)

To maintain an action on the case it is not necessary that it should

be supported by instances or precedent; it is sufficient if the case in question is covered by principle. (*M'Farlane* v. *Moore*, 1 Overton [Tenn.], 174.)

In *Hurwitz* v. *Hurwitz et al.* (30 N. Y. Supp. 208) the General Term of the New York City Court held that a judgment creditor might maintain an action at law against the judgment debtor and another to recover damages for conspiring to prevent the collection of the judgment by removing and disposing of such debtor's property and placing it beyond the reach of execution.

In *Michalson* v. *All* (21 S. E. Rep. [S. C.] 323) it was held that where a person with the connivance of the owner converts to his own use farm products subject to an agricultural lien and places them beyond the reach of the lienee under the statutory proceedings, the latter may, in an action similar to case, at common law recover his damages.

We need not multiply cases to sustain the principle here contended for.

The plaintiff's exceptions should be sustained and a new trial granted, with costs to abide event.

All concurred, except ADAMS, J., not sitting.

Plaintiff's exception sustained and a new trial ordered, with costs to abide the event.