THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v.
WESLEY WHEELER. Appellant.

1. LARCENY — FALSE PRETENSES.    Threats made to the owner of a
residence by a party who falsely represented that he owned lots in the
vicinity and that he would erect a soap factory thereon, whereby such
owner was coerced into buying the lots, do not constitute a false pretense
within the meaning of section 528 of the Penal Code.

2. FALSE REPRESENTATION AS TO OWNERSHIP OF PROPERTY.    The fact
that his representation as to ownership was false does not constitute him
guilty of the crime of larceny by false pretenses where he subsequently
acquired a good title to the lots and vested it in the purchaser at the time
the consideration for them was paid.

*People* v. *Wheeler*, 66 App. Div. 187, reversed.

(Argued December 20, 1901; decided January 28, 1902.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
November 12, 1901, upon an order affirming a judgment of
the Monroe County Court entered upon a verdict convicting
the defendant of grand larceny in the first degree.

The facts, so far as material, are stated in the opinion.

*George Raines* for appellant.    The demurrer to the indict-
ment should have been sustained.    [Whart. Cr. Law [9th ed.],
§§ 932, 934; *Matter of Schurman*, 20 Pac. Rep. 277; *People*
v. *Griffith*, 54 Pac. Rep. 725; *State* v. *Fraker*, 49 S. W. Rep.
1017; *People ex rel.* v. *Oyer & Term.*, 83 N. Y. 441; *People* v.
*Wenner*, 80 Hun, 87; *People* v. *Stone*, 9 Wend. 182; *People*
v. *Haynes*, 11 Wend. 557; *People* v. *Gates*, 13 Wend. 318;
*Wood* v. *Amory*, 105 N. Y. 282; *People* v. *Bd. Suprs.*, 34
N. Y. 268.)    The court erred in charging that it was not a
defense that the representation was true at the time the money
was obtained, November 10, 1894, when the sale was agreed
upon, the deed was given and the money was delivered by Kitts
to Harris, and in charging that it must have been true when
made sometime before.    (*Matter of Snyder*, 17 Kans. 542;
*People* v. *Moore*, 37 Hun, 94; *People* v. *Sully*, 1 Park. 142;

*People* v. *Dimick*, 107 N. Y. 13 ; *People* v. *Scott*, 62 Barb. 62 ; *Wilson* v. *People*, 39 N. Y. 461 ; *Smith* v. *People*, 53 N. Y. 113.) The court erred in charging the jury that the offense was complete if Kitts was really induced to buy by the menace of the threat to build a soap factory, and that the giving of a title to Kitts on the sale was not in that case the question for their consideration in chief, if at all, and was not material. (*People* v. *Blanchard*, 90 N. Y. 314.) The court erred in charging the jury that the delivery to the county clerk of the deed to Harris with intent that it should enable Harris to convey the title to Kitts after a sale, was not for the purpose of the trial under the allegations of the indictment a perfect delivery of the deed ; also in charging that such delivery to the county clerk was not a delivery to the use of Harris of said deed. (*Bliss* v. *Sherrill*, 24 App. Div. 280 ; *Knolls* v. *Bernhart*, 71 N. Y. 474 ; *Rathbun* v. *Rathbun*, 6 Barb. 98 ; *Craig* v. *Wells*, 11 N. Y. 315 ; *Worrall* v. *Munn*, 5 N. Y. 229 ; *Snyder* v. *Ash*, 30 App. Div. 183 ; *Hawver* v. *Wright*, 21 Miss. 211 ; *Bullenkamp* v. *Bullenkamp*, 34 App. Div. 193 ; *Dietz* v. *Farish*, 79 N. Y. 520 ; *Braman* v. *Bingham*, 26 N. Y. 491.) There was a variance between the proof and the allegations of the indictment. (*People* v. *Moore*, 37 Hun, 94 ; *People* v. *Phelps*, 13 Hun, 395 ; *People* v. *Allen*, 5 Den. 79 ; *People* v. *Cohen*, 5 Park. 330 ; *People* v. *Jamison*, 37 Ark. 445 ; *U. S.* v. *Britton*, 107 U. S. 655 ; *State* v. *Stimson*, 4 Zab. 24 ; *People* v. *Bork*, 16 Hun, 476 ; 1 N. Y. Cr. Rep. 380 ; *State* v. *Walls*, 2 Am. Cr. Rep. 325 ; *People* v. *Upton*, 4 N. Y. Cr. Rep. 455.) The court erred in sustaining the privilege claimed by Charles O. Peckens as a witness. (*Nowack* v. *M. S. Ry. Co.*, 166 N. Y. 433.) It was error to receive under exception the evidence of Pollock of the proposition of defendant's witness Holman to take part in a scheme to bribe one or more jurors sitting on the trial. (*People* v. *Watkins*, 23 App. Div. 253 ; *Colwell* v. *Colwell*, 14 App. Div. 80 ; *People* v. *Cox*, 21 Hun, 47 ; *People* v. *Warl*, 29 Hun, 473 ; 92 N. Y. 653 ; *People* v. *Marx*, 63 Barb. 618 ; *People* v. *Rosenwig*, 63 Barb.

634; *People* v. *Zimmerman*, 4 N. Y. Cr. Rep. 272; 53 N. Y. 176; 31 N. Y. 87; 30 N. Y. 245.) The court erred in dragging into the case on the redirect examination of Kitts scores of collateral issues, with conversations about the deals stated, many of which Wheeler was not connected with, as an explanation of why Kitts entertained the idea of a settlement with Wheeler before he went to the grand jury. (*Jamieson* v. *K. C. E. R. Co.*, 147 N. Y. 323; *Gonge* v. *Roberts*, 53 N. Y. 619; *Huntington* v. *Averill*, 118 N. Y. 365; *Matter of Thompson*, 127 N. Y. 463.)

*Stephen J. Warren* for respondent. The trial court did not err in disallowing the demurrer nor in denying the defendant's motion to dismiss the indictment at the close of the People's case. (*People* v. *Helmer*, 154 N. Y. 600; *People* v. *Peckens*, 153 N. Y. 576; *People* v. *Spencer*, 27 Misc. Rep. 493; *People* v. *Wickes*, 11 App. Div. 539; *People* v. *Moran*, 43 App. Div. 155; *Smith* v. *People*, 47 N. Y. 303; *People* v. *McKane*, 143 N. Y. 455; *White* v. *Loudon*, 90 Hun, 218; *People* v. *Lammerts*, 164 N. Y. 137; *Marden* v. *Dorthy*, 160 N. Y. 44.) The court did not err in charging the jury that Harris, in order to make good his representation of ownership, must have held title to the Hague street lots for some appreciable length of time; that indisputable title in Kitts by reason of the doctrine of equitable estoppel would not cure or make less criminal Harris' false representations. (*People* v. *Haynes*, 14 Wend. 546; *Scott* v. *People*, 62 Barb. 62; *People ex rel.* v. *Oyer & Terminer*, 83 N. Y. 436.) The trial court did not err in charging the jury that in making up their verdict they could take into consideration in connection with the representation of ownership Harris' threat to build a soap factory. Nor did the court err in charging the jury in other respects. (*Scott* v. *People*, 62 Barb. 62; *People ex rel.* v. *Oyer & Term.*, 83 N. Y. 436; *Thomas* v. *People*, 34 N. Y. 352; *People* v. *Peckens*, 153 N. Y. 576; *People* v. *Wickes*, 11 App. Div. 539.) The court did not err in his charge to the jury upon the sub-

ject of delivery. At no time was Harris owner of the Hague street lots with the right to make good his threat to build a soap factory. (*Clark* v. *Gifford*, 10 Wend. 310; *Jackson Case*, 2 Wend. 308; *Marden* v. *Dorthy*, 160 N. Y. 49; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 349; *Russ* v. *Stratton*, 66 N. Y. S. R. 96; *National Bank of Pt. Jervis* v. *Bonnell*, 26 Misc. Rep. 541; *Munoz* v. *Wilson*, 111 N. Y. 295; *Jackson* v. *Phipps*, 12 Johns. 418; *Jackson* v. *Leek*, 12 Wend. 105; *Brackett* v. *Barney*, 28 N. Y. 333–340.) There was no variance between the indictment and the proofs. (*People* v. *Herman*, 45 Hun, 175; *People* v. *Sherman*, 133 N. Y. 349; *Phelps* v. *People*, 72 N. Y. 337; *People* v. *Bank of North America*, 75 N. Y. 554; *Thompson* v. *Whitmarsh*, 100 N. Y. 35; *People* v. *Dimick*, 107 N. Y. 13; *People* v. *Lammerts*, 164 N. Y. 137.) The court did not err in sustaining the privilege of the witness Peckens after he had declined to answer on the ground that his answer might tend to incriminate him. (*People ex rel.* v. *Forbes*, 143 N. Y. 219; *People* v. *Priori*, 164 N. Y. 495; *Matter of Leach*, 21 Misc. Rep. 607.) The testimony of Deputy Sheriff Pollock to the effect that Holman, a witness for the defense, offered him $100 if he would procure the attendance of one of the jurors, sitting in the trial of the case, at a certain place designated, was properly received as bearing upon Holman's credibility. (*Garnsey* v. *Rhodes*, 138 N. Y. 461; *People* v. *Webster*, 139 N. Y. 73; *Nowack* v. *M. S. T. Ry. Co.*, 166 N. Y. 433–440; *Morgan* v. *Wood*, 24 Misc. Rep. 739.) The trial court did not err in receiving in evidence testimony in regard to other crooked deals than the one alleged in the indictment. (*People* v. *Peckens*, 153 N. Y. 592; *Mayer* v. *People*, 80 N. Y. 364; *Shippley* v. *People*, 86 N. Y. 375; *People* v. *Everhardt*, 104 N. Y. 591; *People* v. *Dimick*, 107 N. Y. 13.)

Parker, Ch. J. The jury have found that the defendant was guilty of grand larceny in the first degree in that he promoted a scheme by which one Giles F. Kitts was persuaded through false pretenses to part with $800, of which the

defendant in the main received the benefit. Several agents were made use of for that purpose, among them James A. Harris and Albert P. Wickes. The scheme, briefly, was to sell to Kitts some lots very near to a fine residence owned and occupied by him, but which he did not care to buy. The defendant promised Harris to pay to him a price agreed upon if he should succeed in selling the lots to Kitts, and in order to enable him to do so he proposed to put the title to the lots in his name. Harris was instructed to go upon the lots with some men and commence operations, which were to be announced as but the initial steps toward the erection of a soap factory. Wickes was to pretend to be a friend of Kitts, and not a friend of Harris or the others in the scheme, and was to advise Kitts of the threatened erection upon the lots of a factory to be used in the manufacture of soap. The plans were carried out and the anticipated result ensued, for as soon as Kitts appreciated the manner in which his property was menaced, he set about buying the lots and did buy them on the tenth of November, some three days following Harris' first interview with him, paying therefor $800 and assuming the payment of a mortgage of $1,800, which had been put upon the lots by Harris, and which was but an incident in the scheme to get $2,600 for the lots without making necessary a cash payment of more than $800.

Section 528 of the Penal Code defines larceny in so far as it relates to this case, as follows: " A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either  *  *  *  takes from the possession of the true owner, or of any other person; or obtains from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing;  *  *  *  steals such property, and is guilty of larceny."

The theory of the prosecution was that the defendant, through his agents Harris and Wickes, who spoke for him, made false statements or representations as to the intention of

Harris to erect a soap factory upon the lots, by which Kitts became frightened into purchasing the property, and that such false representations constituted false pretenses within the meaning of the statute just quoted.

When the trial court came to submit the case to the jury, at the close of a very long trial, he decided that the threats which Harris made to build a soap factory upon the lots in the near future were not false pretenses within the meaning of the statute under which the indictment was framed, and so instructed the jury, a position which met the approval of the Appellate Division, as it does of this court.   That left in the judgment of the trial court only one possible ground upon which the case could go to the jury, and he opened its presentation to them in these words:

"So I have decided to send this case to you upon the other allegation contained in the indictment, namely: *That James A. Harris was the owner of the Hague street lots. And the prosecution must stand or fall upon that allegation.* Now, in case you find, as a matter of fact, that James A. Harris was not the owner of these lots; that the assertion of ownership was made to Kitts at the instigation of Wheeler, with the intention of deceiving Kitts into the belief that Harris actually was the owner, and that Kitts by virtue of that representation was induced to purchase the lots of him and part with his money as the purchase price, then it constitutes a criminally false pretense, and the amount of money obtained being in excess of five hundred dollars, the crime is defined by the statutes of the state as grand larceny in the first degree."

As the jury were authorized to find from the evidence, and the court so instructed them, that Kitts did obtain from Harris what he contracted for, and agreed to and did pay for, namely, the title and possession of the property, the court's position was that it constituted a false pretense within the intendment of the statute if it was stated that Harris had title when he had not, although subsequently and before the receipt of the money, title passed into him and by his conveyance was trans-

ferred to Kitts. This will sufficiently appear by quoting a single request of the learned counsel for the defendant and the response of the court thereto:

" Defendant's counsel: I ask the court to charge the jury that the representation alleged in the indictment that Harris was the owner of the lots on Hague street cannot be said to be false, if by the papers which passed from Johnson to Harris and from Harris to Kitts, Kitts became legally entitled to the exclusive and permanent use and enjoyment of the possession of the lots on Hague street with the absolute power to sell and convey the same in fee. The Court: I decline to so charge. Defendant's counsel duly excepted."

It is not the law of this state, as we understand it, that a man may be guilty of larceny by false pretense because he has not title to either the real estate or personal property which he undertakes to sell, or says he owns, provided he vests good title in the purchaser at the time he pays the consideration for the property. If a party represents that he has title to property when he knows he has not, and by reason of such representation secures the agreed price without vesting, or intending to vest, title in the would-be purchaser, the crime of course is made out. But there can be no larceny, by false pretense or otherwise, where the purchaser gets precisely what he deliberately bargains for, and for a price which he agrees to pay, knowing fully the character and value of the property. If the court had charged the jury as the defendant requested, and in pursuance of it they had found that by the conveyance from Johnson to Harris and Harris to Kitts the latter became possessed of the property and vested with the title in fee of the lots, then this case would be within the illustration just made, for Kitts agreed to pay $2,600 for the property by paying $800 down and assuming the payment of a mortgage for $1,800, already a lien upon the property; he knew all about the property, for he had once owned it, and if he got good title and possession through Harris he got everything he contracted for, and hence there was no larceny by false pretense or otherwise.

The wrong which the defendant and his associates per-
petrated upon Kitts (if the title to the lots was vested in
him) was of an entirely different character from that of
larceny by false pretense, in that they so operated on his
mind as to induce him to buy property which he did not
desire.  It may well be that the defendant and the others
associated with him in the matter may be guilty of a con-
spiracy and possibly of some other offenses against the law,
but they cannot be held to be guilty of the crime of grand lar-
ceny by false pretense, provided it be true that Kitts got good
title to the property at the time he paid over the consideration,
and the court should have so charged the jury.

The judgment of conviction should be reversed, and a new
trial ordered.

GRAY, O'BRIEN, LANDON, CULLEN and WERNER, JJ., con-
cur; HAIGHT, J., not voting.

Judgment of conviction reversed.