SUPREME COURT—APP. DIVISION—FIRST DEPARTMENT,
July 12, 1906.

# THE PEOPLE v. HENRY REISS.

(114 App. Div. 431.)

(1). GRAND LARCENY—SECOND DEGREE—OBTAINING MONEY ON FALSE
PRETENSES—PENAL CODE §§ 528, 531—EVIDENCE.

Where a defendant is charged with obtaining money from persons intending to take passage on a steamship by falsely representing that he was the agent with whom they had corresponded, and with whom they had desired to deal, it is not error to exclude evidence showing that after having delivered tickets of a less value than those paid for, the persons whom he defrauded would have been willing to accept a return of the overcharge.

(2). SAME.

Nor was it error to exclude evidence as to who paid the board of a complaining witness when the fact does not bear on his credulity.

(3). SAME.

The letter written by the complaining witness to the agent with whom he intended to deal, inclosing a part of the passage money, and evidence that said agent used cards similar to those used by the defendant who impersonated him are admissible.

APPEAL by the defendant, Henry Reiss, from a judgment of the Court of General Sessions of the Peace in and for the county of New York, rendered on the 19th day of May, 1905, convicting the defendant of the crime of grand larceny in the second degree, and also from an order denying the defendant's motion for a new trial and in arrest of judgment.

*George Gordon Battle,* for the appellant.

*Robert S. Johnstone,* for the respondent.

McLaughlin, J.:

The defendant was convicted of the crime of grand larceny in the second degree and sentenced to be imprisoned in State's prison for a term of not less than four nor more than five years. The indictment contained four counts charging him as follows: (1) With grand larceny in the second degree in having obtained by certain false pretenses set forth in the indictment, the sum of thirty-seven dollars from one Toth; (2) with having obtained said sum from Toth by force; (3) with having obtained said sum from Toth by impersonating one Lederer; and (4) with receiving said sum from Toth by false asserting and pretending that he represented Lederer. The learned recorder, in his charge to the jury, withdrew from their consideration the third and fourth counts.

The judgment of conviction is attacked upon the ground that the evidence did not justify a finding that the defendant was guilty of the crime charged; that the court erred in the admission and exclusion of testimony; and that the charge to the jury was erroneous.

The testimony on the part of the People tended to show that the complaining witness Toth, a native of Hungary—but who had resided in this country for some four years prior to March, 1905—was working at that time with four compatriots in the State of Pennsylvania; that towards the end of this month one of these Hungarians, Kovacs—in reply to a circular advertisement from Hugo Lederer's Bank of Exchange—wrote Lederer, of whom Toth knew through his custom of remitting funds through said bank—inclosing a money order for twenty-five dollars—five dollars of which was for himself and the remainder for his four companions, asking that such amount be applied towards the purchase of tickets to be obtained for them from New York city to Oderburg, via Bremen or Hamburg; that April sixth following, the five Hungarians arrived in New York and started out to find Lederer's; they were accosted by

one McGowan, an expressman, whom they informed of their desire; that McGowan collected their baggage checks and one dollar apiece, wrote Lederer's name on a slip of paper from his note book, and put them in his wagon, instructing his brother Charles as to their destination; that instead of being taken to Lederer's at No. 53 Avenue B. they were taken to defendant's office No. 53 Greenwich street, where they were met by a clerk named Adam; that when defendant appeared, Kovacs immediately asked him to identify himself and to produce the letter previously written Lederer, but both Kovacs and Toth were satisfied with the reply that he had received the money, would apply it towards the purchase price of the tickets, and would show the letter to them when the office was opened at nine o'clock; that as a further proof of his identity defendant exhibited a card bearing Lederer's name, which was attached to his clothing, and an envelope on which was Lederer's address printed as they had been accustomed to see it through their previous correspondence with the bank; that the price of a ticket on a fast boat to Hamburg or Bremen and thence to Oderburg, offered by Lederer, was forty-two dollars, and the Hungarians thereupon paid thirty-seven dollars each, supposing this amount, with the five dollars previously sent, would procure a ticket the way they desired to go; that Adam wrote out and delivered receipts for these payments; that the baggage did not arrive at defendant's place of business until one o'clock and he then informed them they could not sail that day; that having remained at defendant's hotel all night, Kovacs and another of the party named Janos started out after breakfast, and by means of one of Lederer's envelopes which Kovacs possessed found Hugo Lederer's and stated the situation to Max Lederer; that a representative from the bank then went to see defendant, told him of the complaint of the Hungarians that he had represented himself to be Lederer, and asked what way and on what boat he intended to have them sail; that the

defendant's reply was evasive, but he gave instructions for the men to be on hand the next morning at nine o'clock; that upon their arriving at that time defendant went out and returned with tickets on the Prince Line, so called, carrying them to Oderburg via Naples, a much longer route, and costing twenty-nine dollars instead of forty-two dollars; that dissatisfaction with the tickets being expressed by the Hungarians, the defendant offered to return thirty dollars to each, which they refused, demanded the thirty-seven dollars which they had paid him and which he refused to return; that finally—apparently at the suggestion of Lederer's representative—they took the tickets which the defendant had purchased and left.

In behalf of the defendant, McGowan testified that he understood the Hungarians to say they wanted to go to a Hungarian agent, though he would not swear in response to a question of the court that he had not written Hugo Lederer's name in his book at the time referred to in the testimony offered by the People.

Defendant's other evidence, furnished in the main by himself, was to the effect that these men came to him in the usual manner of emigrants and were informed by him that they could sail on that day on a boat via the desired route if their baggage arrived in time; that he telephoned McGowan to hurry the baggage along, but it did not get there in time; that there was a large sign bearing his name over the office and that he did not represent himself to be Lederer, whose name was never mentioned until the day following the emigrants' arrival, when he was informed of the remittance sent to Lederer, and that he then advised the men to go to Lederer's and demand the return of the amount as the ship on which they were to sail had been gone two days when they arrived at New York, following Lederer's direction; that the whole matter was a scheme evidenced by the attempted coercion on the part of Lederer's representative when he demanded twenty-five dollars from de-

fendant for his own private gain, failing to receive which he took the emigrants away.

The foregoing is but a brief summary of the testimony offered by the People and the defendant. It is sufficient to say, however, that at the close of the trial a clear question of fact was presented as to whether or not the defendant obtained thirty-seven dollars from the complaining witness by falsely representing himself to be Hugo Lederer. The jury resolved this question in favor of the People, and there is an abundance of evidence to sustain the finding. Such finding established that the defendant was guilty of larceny (Penal Code, § 528, subd. 1), and the amount of money taken being more than twenty-five dollars made it grand larceny in the second degree. (Id. § 531, subd. 1.)

The judgment of conviction, therefore, must be affirmed, unless errors were committed in the other respects alleged. The appellant's contention that Toth should have been allowed on cross-examination to testify in regard to the willingness of his companions and himself to accept the thirty dollars in place of the ticket when first offered by the defendant has no force, as their state of mind at that time—after they had parted with their money—had no bearing on defendant's previous action. He could not fraudulently obtain from them their money and then when trouble arose over the transactions clear himself by offering to return either part or all of the money taken. His guilt or innocence depended upon the original transaction and not what thereafter took place.

Nor did the court err in sustaining the objection to the question put to Toth on cross-examination as to who had been paying his board at the lodging house where he was stopping. The inquiry related to an immaterial subject and in no way bore upon the credibility of the witness, and if for any reason it could be urged that this testimony should have been admitted, it was cured as appears by the charge, to which no exception

was taken, to the effect that evidence had been received bearing on that subject which the jury might take into consideration in determining the credibility of the witnesses offered by the People. At most it was a mere technical error which could not have done the defendant any harm.

The ruling admitting Kovac's letter to Lederer, in which was inclosed the money order referred to, was proper under the restrictions imposed. The same may be said of allowing Lederer to testify that he possessed cards similar to the one described by the People's witnesses as having been worn by defendant.

Finally, it is urged that the court erred in refusing to charge at defendant's request that the jury must be convinced beyond a doubt that defendant intended to appropriate the money to his own use. The court did not err in refusing to instruct the jury as requested; on the contrary, he would have erred had he done so. There was no obligation resting upon the People to present evidence that would satisfy the jury that the defendant was guilty beyond a doubt, but only beyond a *reasonable* doubt. (Code Crim. Proc. § 389.)

The judgment of conviction is right, and it and the order denying a motion for a new trial should be affirmed.

O'BRIEN, P. J., LAUGHLIN, CLARKE and HOUGHTON, JJ., concurred.

Judgment and order affirmed. Order filed.

## OBTAINING GOODS ON FALSE PRETENSES. PENAL CODE, SEC. 528.

The intention of section 528 of the Penal Code was not to make every trespass de bonis or trover, larceny. The intent mentioned in that section means a criminal or felonious intent. People v. Grim, 3 N. Y. Crim. 317. See also People v. McDonald, 43 N. Y. 617; Smith v. People, 53 Ib. 111; Hilderbrand v. People, 56 Ib. 294;

People v. Loomis, 67 Ib. 329; Zinck v. People, 77 Ib. 122; Thom. v. Turck, 94 Ib. 95, followed as to distinction under Revised Statutes, between procuring money by false pretenses, and grand larceny. 3 N. Y. Crim. 317.

The obtaining by an attorney of money or property by false or fraudulent representation, is not governed by section 148 of the Penal Code, but is larceny under section 527 of that Code. People v. Reavey, 4 N. Y. Crim. 1. .

An averment in an indictment that the pretenses therein set forth, as made use of by defendant, were not only false, but were known to him to be false at the time they were made, and were false and fraudulent, is sufficient. People v. Reavey, 4 N. Y. Crim. 1 (October 1885).

In an indictment for obtaining money by false pretense, under the false representation, in the belief of which complainant was induced to part with his money, being that the promissory note presented to and taken by him in return therefor, was made by a particular person, when in fact it was made by another having the same name, there need be no allegation that the maker of the note was of less responsibility than the person falsely represented to be the maker, it being alleged that such pretense was made by defendant with intent to cheat and defraud complainant. People v. Cook, 5 N. Y. Crim. 115.

A false representation, essentially promissory in its nature, cannot be made the foundation of a criminal charge. People v. Fitz-Patrick, 8 N. Y. Crim. 81.

An indictment which charges defendant with a common law larceny by unlawfully and feloniously stealing, taking and carrying away, is not sustained by evidence that defendant obtained the property by false representations. People v. Dumar, 8 N. Y. Crim. 263.

Evidence that defendant told a woman that he had bought stock in a corporation for her which stood in her name on the books thereof, and that it was necessary for her to make a payment thereon, that he received money from her for that purpose and subsequently paid her dividends—that, on her discovery that the stock had never stood in her name, he admitted that it had never been bought and that the money was gone, is sufficient to submit the issue of larceny by false pretenses to the jury. People v. Lewis, 9 N. Y. Crim. 81.

An indictment for false pretenses should state with reasonable certainty the representations actually made, the falsity thereof, and the facts intended to be relied upon to establish such falsity. People v. Winner, 80 Hun 130, 9 N. Y. Crim. 288.

It is not necessary, in order to establish false pretenses, that the proof should be direct; but such evidence must be given and such facts established, as tend legitimately and necessarily to show the existence of such intent. People v. Pinckney, 10 N. Y. Crim. 351; 67 Hun, 428; 51 St. Rep. 310.

An indictment which alleges that defendant falsely represented that he was desirous of owning saloons and desired to purchase a saloon of complainant, that he owned two houses and lots, and not having the money desired to pay part cash and part note and that a certain writing was a valid lien on the houses as security for his note and prevented their sale until the note was paid—is demurrable as not containing false representations of past or existing facts, where it is conceded that the property was not sold to defendant on the credit of his owning the land. People v. Hart, 35 Misc. 182, 15 N. Y. Crim. 483.

False statements made to owners of residence by defendant that he was an owner of adjoining lot and would erect a soap factory thereon, in order to induce such owner to buy the lot, does not constitute false pretenses within the meaning of § 528. People v. Wheeler, 169 N. Y. 487, 16 N. Y. Crim. 270.

Attorney obtaining money by false statements to a woman that she would be criminally prosecuted, may be convicted under § 528. People v. Monroe, 64 App. Div. 130, 16 N. Y. Crim. 5.

When misappropriation of public funds by officer is not false representation. See People v. Dilcher, 38 Misc. 89, 16 N. Y. Crim. 547.

Complaint stating that the prisoner obtained $50.00 from complainant for two purposes, that instead of devoting the money to the objects intended, he appropriated part of it to his own use, and with the balance purchased a wedding ring for complainant which he appropriated to his own use, sufficiently charges larceny. Matter of Dempsey, 32 Misc. 178, 15 N. Y. Crim. 90.

As to when proof of similar transactions with others is proper. See People v. Noblett, 96 App. Div. 293, 18 N. Y. Crim. 476; People v Hughes, 11 N. Y. Crim. 154.

Conspiracy by a pretended dying engineer, falsely stating location of mining vein in order to palm off worthless stock on purchasers. People v. Putnam, 90 App. Div. 125, 18 N. Y. Crim. Rep. 103.

Money deposited with a broker for margins and placed in his general accounts cannot be claimed as received in a fiduciary capacity. People v. Thomas, 83 App. Div. 226, 17 N. Y. Crim. 338.

Where one has his personal check cashed he is liable, where he has the check of another cashed he is not liable for false representation. People v. Whiteman, 12 App. Div. 90, 16 N. Y. Crim. 461.

Pretended sale of stock by broker and call for margin, held not to set forth any criminal offense. People v. Paine, 25 Misc. 763, 16 N. Y. Crim. 60.

Obtaining money on fraudulent drafts. See People v. Huggins, 110 App. Div. 613, 20 N. Y. Crim. 257.

False representation that party obtaining goods is a brother of a business man in good financial standing, and his partner. See People v. Snyder, 110 App. Div. 699, 20 N. Y. Crim. 246.

Where the defendant is charged with drawing a check purporting to be signed by a mythical person and makes no denial the jury has a right to find that such was the actual fact. People v. Pinckney, 10 N. Y. Crim. 351; 51 St. Rep. 310; 67 Hun, 428.

Where defendant was indicted for obtaining a signature of an indorser of a promissory note under false pretenses with intent to cheat and defraud him, it is for the jury to decide whether such representations were made for the purposes of inducing him to indorse the note, and with intent to cheat and defraud him, and whether they were false and calculated to deceive him. People v. Cole, 10 N. Y. Crim. 216; 48 St. Rep. 351.

Upon the trial of an indictment for obtaining money by fraudulent representations as to the solvency of a corporation in which defendant was selling stock, testimony of complainant that he, pursuant to the instructions of defendant made similar statements as to its solvency, to other persons, is admissible, as bearing upon the question of fraudulent intent. People v. Garrahan, 12 N. Y. Crim. 77.

If a person obtains possession of property from the owner for a special purpose by some device, trick, artifice, fraud or false pretence, intending at the time to appropriate it to his own use, and he subsequently does appropriate it to his own use and not to the special purpose for which he received it, he is guilty of larceny. People v. Summer, (Oct. 1898) 13 N. Y. Crim. 318; People v. Hughes, 11 N. Y. Crim. 154.

An indictment for larceny at common law cannot be upheld by proof only of procuring of property by false or fraudulent representations. People v. Summer, (Oct. 1898) 13 N. Y. Crim. 318. People v. Hughes, 11 N. Y. Crim. 154.